763 So.2d 683 (2000)
James Alvin HAWS
v.
PROFESSIONAL SEWER REHABILITATION, INC.
No. 98 CA 2846.
Court of Appeal of Louisiana, First Circuit.
February 18, 2000.
*686 Michelle Sorrells, Arthur Cobb, Baton Rouge, Counsel for Plaintiff/Appellee James Alvin Haws.
Kirk L. Landry, Baton Rouge, Counsel for Defendant/Appellant Professional Sewer Rehabilitation, Inc. and Transcontinental Insurance Company.
Before: GONZALES, FITZSIMMONS, and WEIMER, JJ.
WEIMER, J.
An employer and its insurer appeal an award of compensation benefits, rehabilitation services, penalties, and attorney fees in favor of a former employee. Finding error only in the amounts of the penalty and attorney fees awarded, we amend and otherwise affirm.

BACKGROUND
Claimant, James A. Haws, filed for workers' compensation benefits against his employer Professional Sewer Rehabilitation, Inc. (PSR).[1] He claimed he incurred an on-the-job injury to his left hip and leg while he was loading pipe on Wednesday, March 19, 1997, and further injury on the job on Thursday, March 20, 1997. On Friday, March 21, 1997, he sought medical treatment at Our Lady of the Lake Hospital in Baton Rouge, Louisiana.
Mr. Haws, who had previous surgery to his back in 1990, testified he had worked a full 8.5 hour workday on the previous Saturday for Allen-LeBlanc Professional Sewer, a related company that often shared employees with PSR. He missed work for PSR on Monday, March 17, 1997, and recalled that it was probably because he was with his step-father who dying of cancer. Mr. Haws testified that on March 19, he and his supervisor, Don Mills, were unloading some plastic pipe from a trailer to set up a job for another operator. Upon going back to the truck, he told Mr. Mills he "didn't feel good." Mr. Haws testified he felt he injured his back and leg while unloading the pipe.
At the end of the workday on March 19, Mr. Haws and his son-in-law, Corey Fontenot, who depended on Mr. Haws for transportation, left work together in Mr. Haws' vehicle. This particular day, according to Mr. Fontenot's testimony, Mr. Fontenot drove because Mr. Haws was hurting. Mr. Haws' condition required Mr. Fontenot to drop Mr. Haws at home and take the truck to his own house. He picked up Mr. Haws for work the following morning.
Mr. Fontenot testified that, at work on March 20, everyone noticed Mr. Haws was limping. Mr. Haws testified Mr. Mills even told him he could go home if he wanted. However, Mr. Haws attempted to complete the day's work.
During the day on March 20, Mr. Mills and Mr. Haws went to assist another PSR employee who was having difficulty trying to put a router hose into a sewer line. As they were assisting him, the employee became ill. Mr. Haws remained at the work site as Mr. Mills left with the ill employee. Mr. Haws was unable to complete the task, and he had to call for help. Some of these facts were verified at trial by the employee who became ill and others.
The following morning, March 21, Mr. Haws reported to the hospital emergency room seeking medical treatment for his back injury.
Except for four days in June of 1997 when he tried to return to light duty with PSR, Mr. Haws did not work again prior to the trial of his workers' compensation claim.
In defense of the claim, PSR called Mr. Mills as its chief witness. Mr. Mills' testimony was diametrically opposed to Mr. Haws' version of events. Mr. Mills stated Mr. Haws was limping badly when he reported *687 to work on Tuesday, March 18, 1997. He knew Mr. Haws had worked the full day on the previous Saturday, but he was of the opinion that Mr. Haws had injured his back on Sunday while working on a vehicle at his home. He verified Mr. Haws did not report to work on Monday, March 17, but he did not state a reason for the absence.
The only other live witness for the defense at the trial was John Paul Talkington, who worked with the same PSR crew as Mr. Haws during the week in question. Mr. Talkington said he did not know anything about Mr. Haws injuring himself.
The Office of Workers' Compensation (OWC) judge stated specifically that he found Mr. Haws to be a credible witness. The judge also found Mr. Haws had sustained an on-the-job accident during the course and scope of his employment. During oral reasons for judgment, the judge stated the accident occurred on March 20, 1997, and this date was included in the written judgment that was signed.
The judgment in Mr. Haws' favor also provided that he is entitled to indemnity benefits from the date of the accident, medical benefits, and vocational rehabilitation. The judgment provides for temporary total disability (TTD) benefits until Mr. Haws is released to return to work by a physician, supplemental earnings benefits (SEB) thereafter until he is able to earn 90% of his stipulated weekly wage, and vocational rehabilitation. The OWC judge ordered PSR to pay all medical expenses. He assessed a $2,000.00 penalty for PSR's refusal to pay indemnity benefits; a $2,000.00 penalty or 12% of unpaid medical, whichever is higher, for its refusal to provide medical services; a $2,000.00 penalty for refusal to pay medical benefits within 60 days of notice; and $7,500.00 in attorney fees for PSR's arbitrary and capricious behavior in denying the claim.
PSR perfected this appeal, assigning the following errors:
1. The [OWC judge] committed manifest error in determining that the claimant sustained an injury in the course and scope of his employment with Professional Sewer Rehabilitation on March 20, 1997.
2. The [OWC judge] committed legal error in excluding the impeachment testimony of defendants' witness based upon defendants' alleged failure to list him on initial pre-trial filings.
3. The [OWC judge] committed legal error in determining that the claimant was entitled to vocational rehabilitation services.
4. The [OWC judge] committed manifest error in awarding $7,500 in "penalty attorney fees."
5. The [OWC judge] committed legal error in awarding $6,000 in penalties.

DISCUSSION

On-the-Job Injury:
PSR expends much effort in its brief urging that because the OWC judge specified he found the on-the-job injury occurred on March 20 instead of on March 19, the OWC judge was manifestly erroneous and the judgment should be reversed.
Suffice it to say, the OWC judge made the statement concerning the date (which eventually made its way into the judgment itself) shortly after trial on the merits during which numerous witnesses testified vaguely about the dates concerned. The use of March 20 instead of March 19 by the OWC judge does not taint the more significant finding that an accident occurred on the job as the claimant testified. Implied in the OWC judge's statement that he found Mr. Haws to be credible is his acceptance of the claimant's version of the events in contrast to the version testified to by Mr. Mills, his supervisor.
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial *688 Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882-883 (La.1993).
In LSA-R.S. 23:1021(1) an accident is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." In order to recover workers' compensation benefits, an employee must show that he received a personal injury by accident arising out of and in the course and scope of his employment and that said injury necessitated medical treatment or rendered the employee disabled, or both. Augustus v. St. Mary Parish School Board, 95-2498, p. 3 (La.App. 1 Cir. 6/28/96), 676 So.2d 1144, 1149. The primary burden is to establish an injury was sustained as a result of an accident occurring in the course and scope of employment. LSA-R.S. 23:1031. The fact that an employee does not notify his employer immediately that he suffered an accident, or does so several days after the date of the alleged injury, does not prohibit a finding that the employee sustained an accident. Middleton v. International Maintenance, 95-0238, p. 6 (La.App. 1 Cir. 10/6/95), 671 So.2d 420, 424, writ denied, 95-2682 (La.1/12/96), 667 So.2d 523. Moreover, an employee should not be barred from recovery because he did not realize or diagnose the full extent of his injury immediately after it happened. Middleton, 95-0238 at 6-7, 671 So.2d at 424.
The court in Bruno v. Harbert International Inc., 593 So.2d 357, 360 (La. 1992), noted that the determination of whether an accident occurred is to be construed from the worker's perspective. Notably, however, the claimant's burden of proof is not relaxed, for he or she must still establish a work-related accident by a preponderance of the evidence. Bruno, 593 So.2d at 361. A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident, and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Id.
Thus, in determining whether a worker has shown by a preponderance of the evidence that an injury-causing accident occurred in the course and scope of employment, the trier of fact is expected to focus on the issue of credibility because, absent contradictory circumstances and evidence, a claimant's testimony is accorded great weight. Id. The OWC judge's determinations as to whether the claimant's testimony is credible and whether the claimant has discharged his burden of proof are factual determinations which will not be disturbed upon review in the absence of manifest error or unless clearly wrong. Id.
In the instant case, the only evidence introduced by the defense in an attempt to cast doubt on Mr. Haws' version of the accident was the testimony of Mr. Mills that he was of the opinion that Mr. Haws had injured his back while working on his vehicle at home. However, this opinion was not verified in any manner. On the other hand, Mr. Haws' testimony concerning his injury was verified by the testimony of Mr. Fontenot that he drove Mr. Haws home from work and kept Mr. Haws' truck overnight on March 19 *689 because Mr. Haws was hurting too much to drive. Thus, the two-fold standard established in the jurisprudence for accepting the worker's testimony alone has been satisfied. We will not disturb the OWC judge's finding that an on-the-job injury occurred.
This assignment of error is without merit.

Exclusion of Witness:
At the trial, defense counsel attempted to call as a witness James Hooper Deselle for the stated purpose of impeaching the claimant's witness, Mr. Fontenot. Mr. Haws' counsel objected on the ground that the witness had not been listed on defendant's pre-trial statement. The OWC judge sustained the objection. However, defense counsel did not make a proffer of the excluded testimony.
It is incumbent upon counsel, who contends that a witness's testimony was improperly excluded, to make a proffer, and if he fails to do so, he cannot contend such exclusion was error. When an OWC judge's rulings exclude testimony and counsel fails to proffer the testimony, the claimant cannot complain about the exclusion of such testimony on appeal. Kennedy v. Johnny F. Smith Trucking, 94-0618, p. 6 (La.App. 1 Cir. 3/3/95), 652 So.2d 526, 530.
Counsel for PSR cites La. Admin. Code 40:2141[2] for the proposition that impeachment evidence shall not be discoverable and, therefore, Mr. Deselle's testimony should have been allowed because he was offered as an impeachment witness. Regardless of the rule excluding impeachment evidence from discoverable material, this court cannot make a determination of the nature of the excluded testimony unless a proffer has been made. See Gallow v. Jack Eckerd Corporation, 93-461, p. 5 (La.App. 3 Cir. 1/5/94), 630 So.2d 970, 973, writ denied, 94-0350 (La.3/25/94), 635 So.2d 230, in which the appellate court held the proffered evidence was not impeachment evidence as contended by the defense and it was not error to have excluded it. Additionally, since the defendants failed to proffer the testimony, we do not have it before us and cannot consider its impact on the proceedings. Thus, we cannot determine whether the testimony, if considered by us, would have had sufficient impeachment force to discredit the testimony of Mr. Fontenot.
This assignment of error is without merit.

Vocational Rehabilitation Services:
In this assignment of error PSR maintains it was error for the OWC judge to award benefits for temporary total disability and to order vocational rehabilitation. PSR submits that an award of vocational rehabilitation services to a claimant who is found to be totally unable to work constitutes legal error. PSR cites no legal authority for this proposition.
Indeed, the pertinent statutory provisions and the jurisprudence are to the contrary. A workers' compensation claimant is entitled to TTD benefits for the duration of vocational rehabilitation. Thibodeaux v. Robinswood School, 93-1130, p. 3 (La.App. 3 Cir. 4/6/94), 635 So.2d 585, 587, writ denied, 94-1188 (La.6/24/94), 640 So.2d 1355. Louisiana Revised Statutes 23:1226(F), entitled "Rehabilitation of injured employees," provides in pertinent part:
Temporary disability benefits paid pursuant to R.S. 23:1221(1) ... shall include such period as the employee may be receiving training or education under a retraining program pursuant to this Section.
For example, a claimant's pursuit of a college education through a state vocational *690 program as a program of meaningful rehabilitation following her work-related injury did not relieve her employer of its statutory rehabilitation obligation; the employer was obligated under the rehabilitation statute to pay TTD benefits during the course of such program, not to exceed 52 weeks. Freeman v. Poulan/Weed Eater, 93-1530, p. 9 (La.1/14/94), 630 So.2d 733, 740-741.
This assignment of error is without merit.

Attorney Fees:
The statutory provision for the payment of attorney fees when the employer declines to pay compensation benefits is found in LSA-R.S. 23:1201. The pertinent parts of that statute are:
A. Payments of compensation under this Chapter shall be paid as near as may be possible, at the same time and place as wages were payable to the employee before the accident; ....
. . . .
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.
Thus, attorney fees under LSA-R.S. 23:1201 are not awarded unless the OWC judge imposes a penalty for failure to pay compensation or medical benefits timely. Penalties are not to be assessed when the employee's right to such benefits has been reasonably controverted[3] by the employer or insurer. Statutes providing for penalties and attorney's fees are penal in nature and must be strictly construed. Augustus, 95-2498 at 11-12, 676 So.2d at 1153-1154. The test to determine whether the employee's right to benefits was reasonably controverted is set forth in Watson v. Amite Milling Co., Inc., 560 So.2d 902, 906, (La.App. 1 Cir.), writ denied, 567 So.2d 614 (La.1990), quoting Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363, 367 (La.App. 3 Cir.1985), as follows:
[G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant.
Whether the refusal to pay benefits warrants the imposition of penalties and attorney's fees is a factual question *691 which will not be disturbed upon review in the absence of manifest error or unless clearly wrong. Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736, 740 (La.App. 1 Cir.), writ denied, 553 So.2d 466 (La. 1989).
In the instant case, PSR relies heavily on the trial testimony of Mr. Mills for the proposition that it had sufficient factual information to reasonably counter the claim of Mr. Haws. Additionally, PSR points to a conflict between pre-trial statements by Mr. Haws that he was injured on March 19 and the OWC judge's statement that the accident occurred on March 20. We have already discussed this question and found the conflict to be insignificant. Suffice it to say, PSR cannot use a statement made by the OWC judge after trial as a basis for its having challenged Mr. Haws' claim since the time of injury. A determination of whether a denial of compensation benefits was warranted depends primarily on the facts existing and known at the time that benefits are denied. Vernon v. Wade Correctional Institute, 26,053, p. 9 (La.App. 2 Cir. 8/19/94), 642 So.2d 684, 691. The court must consider whether there was a "reasonable" basis for a dispute as to the employee's entitlement to benefits. Culotta v. Great Atlantic and Pacific Tea Company, 524 So.2d 259, 262 (La.App. 5 Cir.), writ denied, 530 So.2d 88 (La.1988).
PSR's assertion that penalties and attorney fees were not warranted because PSR reasonably controverted Mr. Haws' claim is without merit.
Alternatively, defendant contends that the $7,500.00 awarded in attorney fees is excessive. We agree.
Although the award of attorney fees under LSA-R.S. 23:1201(F) is penal in nature, as previously noted, the award of a reasonable fee is within the broad discretion of the trier of fact. Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65, 69 (La.1983). The trier of fact may employ his own experience and expertise in deciding the amount of time and effort the lawyer has put into the preparation of the case. Culotta, 524 So.2d at 262. The factors used to determine the amount of attorney fees are the degree of skill and ability exercised, the amount of the claim, the amount recovered, and the amount of time devoted to the case. Naquin v. Uniroyal, Inc., 405 So.2d 525, 528 (La.1981).
In the instant case, the OWC judge did not state any reason for making an award of $7,500.00 for attorney fees; that was the amount requested by the claimant. Our review of the record convinces us the OWC judge abused his discretion in this award. Pre-trial preparation appears to have been minimal. The record consists of one volume and claimant's exhibits are contained in one envelope. Indeed, the claimant's own estimate of the time necessary for trial stated in his pre-trial statement was less than an hour.
Accordingly, we will reduce the amount of the attorney fees to $5,000.00. Furthermore, although Mr. Haws answered the appeal seeking additional attorney fees, we find that the above amount will be sufficient in light of the amount of time and effort expended at the trial level and in this court.

Penalties:
Finally, PSR challenges the award of $6,000.00 in penalties pursuant to LSA-R.S. 23:1201(F). The judgment provided for a $2,000.00 penalty for refusal to pay indemnity benefits, plus a $2,000.00 penalty for refusal to provide medical services, plus a $2,000.00 penalty for refusal to pay medical benefits within 60 days of written notice.
In his brief to this court, Mr. Haws: (1) admits the amount awarded in penalties should be reduced by $2,000.00; (2) submits that two penalties are proper, $2,000.00 for failure to pay indemnity benefits and $2,000.00 for failure to pay medical benefits; and (3) admits it was improper for the judgment to provide for a third penalty for the untimely payment of medical *692 benefits after written notice, as this penalty duplicates the penalty for refusal to provide medical services. We agree.
Although we find it necessary to reduce the penalties to eliminate a duplicative award, we find no merit in PSR's assertion that LSA-R.S. 23:1201(F) imposes only one $2,000.00 cap for all of the items the defendant refused to pay in the instant case. PSR asserts the most that could have possibly been awarded was $2,000.00. We conclude PSR's reading of the statute is incorrect.
The pertinent language in LSA-R.S. 23:1201(F), previously quoted, allows the assessment of a penalty calculated on "any unpaid compensation or medical benefits... for each day in which any and all compensation or medical benefits remain unpaid," but limited to "a maximum of two thousand dollars in the aggregate for any claim." The statute provides for the assessment of a penalty for the failure to pay "compensation or medical benefits." (Emphasis added.) The statute also grants reasonable attorney fees "for each disputed claim." (Emphasis added.) Injured workers have a claim for compensation and a claim for medical benefits. Thus, the $2,000.00 penalty cap applies to each claimthe claim for compensation or the claim for medical benefits. The imposition of only one penalty would effectively serve to immunize an employer; if an employer fails to pay one claim (for example, medical benefits), there would be no penalty to serve as a disincentive for refusing to pay the other claim (for compensation).[4]
We note an identical reading of LSA-R.S. 23:1201 by the third circuit court. In LeJeune v. Trend Services, Inc., 96-550, p. 9 (La.App. 3 Cir. 6/4/97), 699 So.2d 95, 101, the court held that under LSA-R.S. 23:1201, an employee was entitled to one maximum penalty of $2,000.00 for failure to timely pay any and all compensation benefits and one maximum penalty of $2,000.00 for failure to timely pay any and all medical benefits. Accord, McLaughlin v. Hill City Oil Company/Jubilee Exxon, 97-577, p. 13 (La.App. 3 Cir. 10/8/97), 702 So.2d 786, 793, writ denied, 97-2797 (La.2/13/98), 706 So.2d 994; Kendrick v. Bill Liberto Enterprises, 96-979, pp. 7-9 (La.App. 3 Cir. 6/18/97), 698 So.2d 22, 26-27.[5]

CONCLUSION
Accordingly, we amend the judgment to reduce the penalties to $4,000.00 and to reduce the attorney fees to $5,000.00. In all other respects, we affirm. We cast defendants with all costs of this appeal.
AMENDED, AND AS AMENDED, AFFIRMED.
FITZSIMMONS, J., concurs in the result.
NOTES
[1] The appeal was taken on behalf of Professional Sewer Rehabilitation, Inc. and Transcontinental Insurance Company, as both the employer and its insurer were cast in judgment. However, we refer to the defendants collectively as "PSR."
[2] Louisiana Administrative Code 40:2141 provides in pertinent part:

Impeachment evidence shall not be discoverable material and a party shall not be required to disclose impeachment evidence, including but not limited to witnesses, documents, photographs, or films.
[3] The "reasonably controverted" standard is different from the "arbitrary and capricious" standard applicable for a claim brought pursuant to LSA-R.S. 23:1201.2, when the employer discontinues benefits. In Williams v. Rush Masonry, Inc., 98-2271, p. 7 (La.6/29/99), 737 So.2d 41, 45, the Louisiana Supreme Court explained the difference, as follows:

Since the 1995 amendment [to LSA-R.S. 23:1201 and 23:1201.2], Section 1201 now generally governs the time period for commencing payment of compensation benefits and the timeliness of payment of continued benefits, as well as the time period for paying medical benefits; Section 1201 now also authorizes the award of both penalties and attorney's fees if payment of compensation benefits is not commenced timely, if continued benefits are not paid timely, or if medical benefits are not paid timely, unless "the claim is reasonably controverted" (or the nonpayment results from conditions over which the employer and insurer have no control); and Section 1201.2 now governs the discontinuance of payment of claims due and arising under the Act, with an award of attorney's fees authorized when the discontinuance is arbitrary, capricious or without probable cause, as well as penalties only against the insurer in limited situations. (Footnote omitted.)
[4] We note this court has previously held that there can only be one penalty or attorney fee award against an employer or insurer under LSA-R.S. 23:1201(F). Bergeron v. Watkins, 98-0717, p. 8 (La.App. 1 Cir. 3/2/99), 731 So.2d 399, 404. This court amended a judgment of the OWC judge that awarded separate penalties to be paid by the employer and by the insurer because both had been at fault in not paying compensation benefits. This court held that the double penalty violated the $2,000.00 maximum allowed by Section F. However, that case did not address the issue presented by the instant appeal, which is whether an employer and its insurer can be liable for two penalties subject to separate caps when there is a failure to pay compensation benefits and medical expenses.
[5] We note that there has been no legislative overruling of the holdings in the third circuit cases. See Phillips v. Dresser Engineering Company, 351 So.2d 304, 309, n. 3 (La.App. 3 Cir.1977), writ denied, 353 So.2d 1048 (La. 1978) (where the legislature could have included, in workers' compensation statutes, language to legislatively alter or overrule previous jurisprudence but did not do so, its failure to do so evinced an intent to leave the prior jurisprudence undisturbed.)