835 So.2d 697 (2002)
Carlton GOODMAN
v.
MANNO ELECTRIC, INC. and Louisiana Workers' Compensation Corporation.
No. 2001 CA 2863.
Court of Appeal of Louisiana, First Circuit.
November 8, 2002.
*698 Mark Zimmerman, Lake Charles, Counsel for Plaintiff/Appellee, Carlton Goodman.
Sammie Henry, Merilla B. Miller, Baton Rouge, Counsel for Defendants/Appellants, Manno Electric, Inc. and Louisiana Workers' Compensation Corporation.
Before: PARRO, JAMES, and PATTERSON, JJ.[1]
PATTERSON, J. pro tempore.
Defendant, Manno Electric, Inc. (Manno), appeals the decision rendered by the workers' compensation judge (WCJ)[2] on *699 October 24, 2000, awarding claimant, Carlton Keith Goodman (Goodman), temporary total disability benefits from August 19, 1999, to September 22, 1999; supplemental earnings benefits at the full rate from September 22, 1999, until February 10, 2000; supplemental earnings benefits at the modified rate from February 10, 2000, until February 17, 2000; and applicable judicial interest and court costs. The WCJ also found that Manno did not reasonably controvert the claim, and assessed $4,000 in penalties and $2,000 in attorney's fees against Manno.

FACTS AND PROCEDURAL HISTORY
From May 5, 1999, until August 19, 1999, Goodman was employed by Manno as a foreman. This job entailed supervising other employees, working with heavy equipment, acting as an electrician, and doing maintenance tasks. The job also involved digging and cutting trenches in the ground. Goodman's average weekly wage while he worked for Manno was $440. While working for Manno at the Tiger Plaza apartment complex worksite, Goodman was involved in five accidents that combined to result in his injury.
The five incidents that culminated in Goodman's injury occurred in early August 1999. Originally, Goodman dislocated his knee as he was jumping on a shovel at the worksite. A second incident occurred when Goodman was getting down into a manhole, which had been dug for fiberoptics and telephone cable. As he was getting down into the manhole, Goodman slipped on dirt and popped the same knee out of socket. The third incident occurred when Goodman fell off a tractor/trencher at the site. The fourth incident occurred as Goodman was walking down the sidewalk next to the maintenance building at the worksite. As Goodman kicked his leg forward, his knee came out of socket again. Goodman continued to work after these four incidents. The fifth and final incident occurred as Goodman was walking into his house. As had occurred earlier, Goodman's knee came out of socket as he was simply walking. After this fifth incident, Goodman could no longer "pop" his knee back into place and suffered severe swelling and pain.
Goodman first reported his injury to Jay Manno of Manno Electric, Inc., on August 12, 1999, about a week after the shoveling incident. Goodman spoke to Jay Manno a second time about his injury on the telephone, informing Jay Manno that he could not come back to work because his knee injury seemed serious. Jay Manno suggested that Goodman seek medical treatment.
On August 13, 1999, Goodman saw Dr. Rosalyn Tabor for his knee injury. Dr. Tabor referred Goodman to Dr. Gerard Murtagh at The Bone & Joint Clinic of Baton Rouge, whom he saw on August 16, 1999. Dr. Murtagh diagnosed Goodman with an internal derangement of the right knee and probably torn cartilage. Dr. Murtagh opined that the cause of Goodman's injury was from the shoveling incident. Dr. Murtagh released Goodman to return to light-duty work. However, Goodman's last day of work with Manno was on August 19, 1999. On September 9, 1999, Dr. Murtagh performed an arthroscopy and debridement of the right knee.
On October 6, 1999, Goodman filed a disputed claim for compensation (an *700 LDOL-WC-Form 1008) with the Office of Workers' Compensation, for indemnity and medical benefits. Goodman stated in the disputed claim for compensation that he was injured on August 12, 1999, while going down a manhole, and later reported the injury to his supervisor, Jay Manno, on August 17, 1999. On October 11, 1999, Manno filed a Form 1007/First Report of Injury, which stated that an accident was reported on August 12, 1999, and that the incident involved Goodman jumping on a shovel. The Louisiana Workers' Compensation Corporation (LWCC) investigated the matter and ultimately denied the claim for indemnity or medical expenses due to the inconsistencies provided by the parties and witnesses.
A trial on the matter was conducted on September 11, 2000. After hearing the testimony and reviewing the evidence, the WCJ found that Goodman suffered a compensable accident while in the course and scope of his employment with Manno, and as a result, was entitled to indemnity and medical benefits related to the compensable injury. Additionally, the WCJ found that the cause of Goodman's injury was the shoveling incident, when his knee popped out of place, despite a pre-existing problem Goodman had with the same knee. The WCJ awarded benefits to Goodman, as well as an award of penalties and attorney's fees as a result of Manno's failure to reasonably controvert Goodman's claim.
On appeal, Manno asserts the following assignment of error:
The workers' compensation judge committed manifest error in awarding penalties and attorney's fees against the employer, Manno Electric, Inc., when the evidence produced in the case shows that they had a reasonable basis to controvert the claim of Goodman.
Goodman answered the appeal, claiming that the decision of the WCJ was correct. However, Goodman argues in his assignment of error that the WCJ's award of $2,000 in attorney's fees was too low, and thus, an abuse of discretion and reversible error. Goodman also contends that he is entitled to additional attorney's fees for this appeal.

LAW AND ANALYSIS
The statutory provision for the payment of penalties and attorney's fees when the employer declines to pay compensation benefits is found in La. R.S. 23:1201. The applicable portion of the statute provides:
A. Payments of compensation under this Chapter shall be paid as near as may be possible, at the same time and place as wages were payable to the employee before the accident....
* * *
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.

*701 (2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
Attorney's fees under La. R.S. 23:1201 are not awarded unless the WCJ imposes a penalty for failure to pay compensation or medical benefits timely. Penalties are not to be assessed when the employee's right to such benefits has been reasonably controverted by the employer or insurer. Statutes providing for penalties and attorney's fees are penal in nature and must be strictly construed. Haws v. Professional Sewer Rehabilitation, Inc., 98-2846 (La.App. 1 Cir. 2/18/00), 763 So.2d 683, 690.
In Hall v. McDonald Insulation, 537 So.2d 328, 332-33 (La.App. 1 Cir.1988), this court adopted the test set forth in Chelette v. American Guarantee and Liability Ins., Inc., 480 So.2d 363, 367 (La. App. 3 Cir.1985), to determine whether an employee's right to benefits has been reasonably controverted, which tests provides:
Given the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. This test requires a close analysis of each workers' compensation case.
Whether the refusal to pay benefits warrants the imposition of penalties and attorney's fees is a factual question, which we will not disturb in the absence of manifest error. Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736, 740 (La.App. 1 Cir.), writ denied, 553 So.2d 466 (La. 1989). A determination of whether a denial of compensation benefits was warranted depends primarily on the facts existing and known at the time that benefits are denied. The court must consider whether there was a "reasonable" basis for a dispute as to the employee's entitlement to benefits. Haws v. Professional Sewer Rehabilitation, Inc., 763 So.2d at 691.
In this matter, the WCJ was provided with the testimony of, among others, Goodman, Jack and Jay Manno, who are the president and vice-president of Manno, and Angie DeShazer, an LWCC claims adjuster. Each party provided his or her summary of events surrounding Goodman's injury and how it occurred. The testimony was both conflicting and confusing. However, the WCJ concluded that the cause of Goodman's injury was the shoveling incident, which occurred within the course and scope of employment and ultimately resulted in Goodman's knee injury. Neither Manno nor LWCC appeal this determination by the WCJ. In her reasons, the WCJ opined:
I think that Dr. Murtagh very clearly set out in his deposition how he felt about the way this developed. It's the result of the [shoveling] incident... You are asymptomatic before, and you are symptomatic after, and it was caused by the [shoveling] incident and it did happen on the job.
Next, the WCJ had to determine whether Manno knew of this incident and injury and did not reasonably controvert the claim, as required under La. R.S. 23:1201(F)(2). Manno argues that it had a reasonable basis for denying the claim because it did not know about the shoveling incident until Goodman filed his disputed claim for compensation on October 6, 1999. In reaching her conclusion on this issue, the WCJ looked at the evidence and testimony *702 provided. The WCJ noted that Manno filled out the 1007 Form about the shoveling incident, remarking that this form is a document that is "totally within the purview of the employer." The WCJ found that the information provided in the 1007 Form was relayed to Crystal Sanchez, who prepared the form, by Jack Manno. In the 1007 Form, Manno provided that Goodman was injured on or about August 6, 1999, that it was informed of the injury on August 12, 1999, and that the injury occurred when Goodman was "digging with a shovel." While Jack Manno stated he was unaware of any shoveling incident, the WCJ was not clearly wrong in concluding that Jack Manno provided this information in the 1007 Form, based upon the testimony of Ms. Sanchez.
In her oral reasons, the WCJ stated:
[Crystal Sanchez] also said that she got all the information for filling out the 1007 from Mr. Jack Manno. She specifically included the knowledge of the date that the employer knew, August 12th, because I asked her where did you get this August 12th date, and she said I got it from Mr. Jack. So when she fills out this form, she is getting this information between Mr. Goodman and the employer. Mr. Goodman may have supplied her, in her mind, with a [shoveling] incident, but there are a lot more specifies in this 1007, from her testimony, than she ever got from Mr. Goodman. So I do believe they knew of these incidents.
* * *
Now, moving to the next issue and that's reasonable controversion.... I mean, this is a credibility call for me, in general, in trying to piece this thing together, because I can't accept either sides (sic) complete versions. They don't melt (sic).
So, I'm not going to award any penalties or attorney's fees against the insurer. However, in light of the employers filling out that 1007, and the information on it and Mr. Jack Manno[']s testimony with regard to discussions he had with his son, I feel they knew he had problems and had had incidents with his knee on the job and they didn't tell LWCC about this, or that they presented it to LWCC in a manner that led LWCC to believe that he never had any incidents on the job. Therefore, I am awarding penalties and attorney's fees against Manno Electric.
Manno knew of the shoveling incident that occurred while Goodman was employed with Manno, prior to Goodman's filing of the disputed claim for compensation. Based on this fact, the WCJ concluded that Manno did not reasonably controvert Goodman's claim for indemnity and medical benefits. We find no error with the WCJ's conclusion. Thus, Manno's contention that penalties and attorney's fees were not warranted because Manno reasonably controverted the claim is without merit.
Although, as previously noted, the award of attorney fees under La. R.S. 23:1201(F) is penal in nature, the award of a reasonable fee is within the broad discretion of the trier of fact. Orgeron v. Tri State Road Boring, Inc., 434 So.2d 65, 69 (La.1983). The trier of fact may employ his own experience and expertise in deciding the amount of time and effort the lawyer has put into the preparation of the case. Haws v. Professional Sewer Rehabilitation, Inc., 763 So.2d at 691. The factors used to determine the amount of attorney fees are the degree of skill and ability exercised, the amount of the claim, the amount recovered, and the amount of time devoted to the case. Naquin v. Uniroyal, Inc., 405 So.2d 525, 528 (La.1981).
*703 Goodman argues that the award of attorney's fees was unreasonably low in light of the pre-trial preparation, pre-trial discovery, deposition of Dr. Murtagh, and the length of the trial. The WCJ awarded $2,000 in attorney's fees against Manno. Goodman seeks to have the amount of attorney's fees awarded raised to $5,000 for the trial level work, with an additional $2,500 for work on the appeal. Although Goodman has answered the appeal and requested an increase in attorney's fees awarded, as well as additional attorney's fees for this appeal, we do not find that the WCJ abused her discretion in awarding $2,000 in attorney's fees. We find the above amount is sufficient in light of the amount of time and effort spent at both the trial level and in this court. Therefore, this argument is without merit. The decision of the WCJ is affirmed, with costs assessed to Manno.
AFFIRMED.
NOTES
[1] Judge A. Clayton James, retired, and Michael A. Patterson are serving as judges pro tempore by special appointment of the Louisiana Supreme Court.
[2] La. R.S. 23:1310.5(F) requires that the published court of appeal decision identify the office of workers' compensation district from which the appeal was taken and the name of the workers' compensation judge who rendered the judgment. The workers' compensation judge was Honorable Pamela Moses-Laramore of the Office of Workers' Compensation, District 5.