849 So.2d 592 (2003)
Elouise THOMAS
v.
WAL-MART.
No. 2002 CA 1356.
Court of Appeal of Louisiana, First Circuit.
May 9, 2003.
*593 Robert A. Lenter, Ruben Hernandez, Jr., Metairie, for Plaintiff-Appellee Elouise Thomas.
*594 Frank A. Flynn, Lafayette, for Defendant-Appellant Wal-Mart.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
PETTIGREW, J.
In this case, defendant appeals a judgment of the Office of Workers' Compensation awarding claimant temporary total disability benefits, penalties, and attorney fees in connection with a work-related accident. For the reasons that follow, we amend and affirm.

FACTS AND PROCEDURAL HISTORY
On January 29, 2001, claimant, Elouise Thomas, filed a disputed claim for compensation with the Office of Workers' Compensation averring entitlement to workers' compensation benefits. Ms. Thomas alleged that on October 22, 2000, during the course and scope of her employment with Wal-Mart, she injured herself while she was stocking merchandise in the stationery department. According to Ms. Thomas, her foot became tangled up in some shrink wrap on a large pallet, causing her to fall to the floor and strike her right knee.
Immediately following the accident, Ms. Thomas experienced pain in her right knee and was limping, but managed to complete her shift, which ended at 6:00 a.m. After returning home following her shift, Ms. Thomas notified Addie Bogan, personnel manager at Wal-Mart, that she had fallen. At that time, no accident report was generated as Ms. Thomas indicated that she was not hurting. However, later that afternoon, Ms. Thomas again contacted Ms. Bogan, indicating that she was in pain and needed medical treatment. It was then that Ms. Bogan advised Ms. Thomas to return to the store to complete an accident report and an associate's statement.
Ms. Bogan subsequently scheduled an appointment for Ms. Thomas with Dr. Lianter Albert on October 24, 2000. Dr. Albert took x-rays, which revealed no signs of acute bony trauma, and prescribed Arthrotec and crutches for Ms. Thomas. Dr. Albert's diagnosis was that Ms. Thomas had sustained a contusion to her right knee. He advised Ms. Thomas to stay off of work for two days and return to see him at that time. On October 26, 2000, Dr. Albert released Ms. Thomas to return to "light duty" work at Wal-Mart. According to the record, Ms. Thomas returned to Wal-Mart and answered the phones for a few days. Ms. Thomas was then asked to handle "light returns" by assisting other associates in gathering returns and other merchandise that had been placed on shelves or racks and putting them back in their appropriate places.
Dwain Paul, support manager at Wal-Mart, testified that he was in contact with Ms. Thomas and her doctors during this time to insure that she was being accommodated within her particular restrictions. At some point after Ms. Thomas began doing "light returns," she complained to Mr. Paul that she was having problems with her knee and was not able to stand for long periods of time. It was at that time that Mr. Paul accommodated Ms. Thomas with a motorized handicapped cart to assist her with her duties. However, after she began using the motorized cart, Ms. Thomas started complaining of back pain associated with the use of the cart. When asked if he did anything to further accommodate Ms. Thomas, Mr. Paul testified that it was around this time that she stopped reporting to work.
According to Ms. Thomas' medical records, she only saw Dr. Albert on three occasions. Dr. Albert then referred Ms. Thomas to Dr. Jeffrey C. Fitter at the Morgan City Orthopedic Clinic. Dr. Fitter's *595 records, which consist of various letters dictated by Dr. Fitter for the benefit of Claims Management, Inc. (Wal-Mart's workers' compensation carrier), were introduced into evidence at the hearing of this matter. A summary of Dr. Fitter's treatment of Ms. Thomas follows.
Ms. Thomas first saw Dr. Fitter on November 15, 2000, at which time Ms. Thomas was complaining of right knee pain. Dr. Fitter noted that Ms. Thomas was "quite overweight." Ms. Thomas was walking with a limp and still using a crutch, sometimes two, to assist her in walking. Dr. Fitter found that Ms. Thomas had a sprained right knee and significant degenerative changes. Dr. Fitter advised Ms. Thomas to continue with light duty work at Wal-Mart and prescribed a light wrap-around splint for her knee.
On December 1, 2000, Dr. Fitter found that Ms. Thomas was still symptomatic and unable to bear full weight because of pain in her right knee. It was during this visit that Ms. Thomas told Dr. Fitter that she was using a motorized cart to get around the store. Ms. Thomas complained that her legs had been swelling "quite a bit," but Dr. Fitter noted her history of venous stasis. Dr. Fitter indicated that Ms. Thomas' "recovery from her knee injury is complicated by her severe overweight condition, making mobility very difficult." He noted further that Ms. Thomas' "mobility won't increase until symptoms of right knee pain improve." Dr. Fitter advised Ms. Thomas to continue with her present light duty restrictions on the job and return in two weeks.
During her next visit with Dr. Fitter on December 15, 2000, Ms. Thomas was still complaining of persistent right knee pain and swelling of the entire right leg. She also indicated that she had been experiencing a degree of lower backache. Dr. Fitter noted that both of Ms. Thomas' legs were swollen, with the right one more so than the left. Ms. Thomas was wearing support stockings at the time, something that she had been doing for venous insufficiency prior to her work injury. Dr. Fitter recommended that Ms. Thomas continue with light duty work and continue to wear the support stockings. Dr. Fitter further noted that with Ms. Thomas' severe overweight condition and lower extremity edema, he was not optimistic that she would improve in the near future.
Ms. Thomas returned to see Dr. Fitter on January 11, 2001, at which time Ms. Thomas indicated that she had been seen by Dr. Gary Wiltz who advised her to stop working.[1] Dr. Fitter found no significant change in Ms. Thomas' condition, noting that she was still suffering from a lower backache and still showed signs of venous insufficiency in both legs. In a letter concerning this office visit, Dr. Fitter stated as follows with regard to Ms. Thomas' prognosis:
She has significant degenerative disease in her right knee as well as severe venous insufficiency in both legs. These conditions are aggravated by her severe overweight problem and could make it unlikely that this patient is going to return to ambulatory status in the near future. Additionally she appears to be developing chronic low back problems which are probably also referable to her overweight condition. I have no objection to her being off work at this time. *596 The record contains an "Accident and Illness Report" dated January 11, 2001, wherein Dr. Fitter indicated that Ms. Thomas should not work for one month.
The next correspondence in Dr. Fitter's records is a February 13, 2001 letter generated in response to a fax from Claims Management, Inc. wherein Dr. Fitter outlined the "complex nature" of Ms. Thomas' problems. The following is an excerpt from this letter, detailing Ms. Thomas' medical history and prognosis:
While I have been treating Ms. Thomas for a contusion or sprain of the [right] knee she has several pre-existing medical conditions which have seriously complicated and prolonged her management. Ms. Thomas had arthritic changes on initial x-rays of the [right] knee which certainly predated her injuries and have contributed to the chronic local discomfort in her knee. Ms. Thomas is also severely overweight, making it somewhat difficult for her to ambulate even in the best of circumstances and significantly limiting her ability to walk following her injury. Thirdly, the patient suffers from severe pre-existing venous insufficiency in both legs which has resulted in refractory swelling requiring strict elevation of both legs. Support stockings only partially control this problem.
Because of the patient's injury and multiple pre-existing conditions I have recommended that she work strictly in a sitting position, I understand that she gets around the store in a customer's electric shopping cart for the most part. She should continue with these work restrictions which have been documented in previous reports. Due primarily to her multiple pre-existing medical conditions I do not believe Ms. Thomas' ambulatory status and ability to work is going to improve in the near future. I think it is realistic to assume that she now has recovered from the sprain or contusion of the right knee sustained in October of last year and remains limited primarily by her pre-existing condition. I would judge her to be at maximum medical improvement from her injury. I do not expect her medical conditions to improve however and think Ms. Thomas is a candidate for long term or permanent disability status because of these conditions.
Ms. Thomas returned to see Dr. Fitter on February 15, 2001, complaining that her back and knee symptoms were worse. At that time, Dr. Fitter found no significant changes on exam and indicated that her disability at that time was "due primarily to her multiple pre-existing conditions." With regard to Ms. Thomas' work status, Dr. Fitter noted the recommendation by Dr. Wiltz that she "stay off work primarily because of her description of increased backache while operating her motorized cart" and acknowledged that he concurred with that recommendation. In fact, in an "Accident and Illness Report" dated February 15, 2001, Dr. Fitter recommended that Ms. Thomas remain off work for one month, after which time he would re-evaluate her status.
On March 23, 2001, Ms. Thomas was again examined by Dr. Fitter. He found no significant changes on exam. Ms. Thomas was walking with the assistance of a "quad cane" but indicated that she was only able to walk a maximum of 50 to 100 feet without having to stop for a rest. Dr. Fitter noted that Ms. Thomas had been off work at the recommendation of Dr. Wiltz, a decision he concurred with on Ms. Thomas' last visit. However, he indicated that Wal-Mart wanted Ms. Thomas to consider returning to "some very light work." Dr. Fitter apparently discussed this option with Ms. Thomas, who agreed *597 that she could work as long as she was allowed to do so while constantly sitting down. According to the record, Dr. Fitter was to see Ms. Thomas again in six weeks; however, there is no indication that she ever returned to see Dr. Fitter. There are no further work excuse slips in the record from Dr. Fitter concerning Ms. Thomas' work status.
Also introduced into evidence at that hearing of this matter were the records from Dr. Wiltz concerning his treatment of Ms. Thomas. Ms. Thomas was first examined by Dr. Wiltz on December 20, 2000, at which time she complained of pain in her right knee and lower back. Dr. Wiltz advised Ms. Thomas "to have rest and decreased weight bearing and elevation of her feet."[2] On December 27, 2000, Ms. Thomas returned to see Dr. Wiltz with the same complaints. It was at this time that Dr. Wiltz first advised Ms. Thomas that she should refrain from all work. Ms. Thomas was seen on three other occasions by Dr. Wiltz, January 10, 2001, February 8, 2001, and March 19, 2001. Throughout the course of her treatment with Dr. Wiltz, Ms. Thomas remained off work at his recommendation. The last work excuse slip in the record from Dr. Wiltz indicates that Ms. Thomas was excused from work from March 19, 2001, the date of her last visit with Dr. Wiltz, until June 18, 2001. There is nothing in the record to suggest that Ms. Thomas had any follow-up treatment with Dr. Wiltz after her last appointment on March 19, 2001.
Ms. Thomas' claim for compensation proceeded to hearing on March 8, 2002. The workers' compensation judge heard testimony from Ms. Thomas, Ms. Bogan, and Mr. Paul, allowed the introduction of various documents into evidence, including the medical records from Ms. Thomas' treating physicians, and took the matter under advisement. The judge subsequently rendered judgment on April 12, 2002, finding that (1) Ms. Thomas' current disability status was caused by the workrelated accident of October 22, 2000; (2) Ms. Thomas was entitled to temporary total disability benefits; (3) Ms. Thomas did not have her choice of physician in the field of orthopedics; and (4) Wal-Mart was arbitrary and capricious in the handling of Ms. Thomas' claim thus entitling her to $2,000.00 in penalties and $2,000.00 in attorney fees. It is from these judgments that Wal-Mart has appealed, assigning the following specifications of error:
1. The trial court committed manifest error when the court found plaintiff, Elouise Thomas, was entitled to workers' compensation benefits when the plaintiff failed to carry the requisite burden of proof regarding medical connexity of the work accident and her right knee condition.
2. The trial court committed manifest error when the court found plaintiff, Elouise Thomas, was entitled to temporary total disability benefits without specifying the duration of such benefits.
3. The trial court committed manifest error when it found Wal-Mart was arbitrary and capricious and awarded penalties and attorney's fees when there were substantial and [legitimate] disputes over the extent of work related injury and/or work related disability, if any.

*598 STANDARD OF REVIEW
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. As an appellate court, we cannot set aside the factual findings of the workers' compensation judge unless we determine that there is no reasonable factual basis for the findings and the findings are clearly wrong (manifestly erroneous). Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel that its own evaluations and inferences are as reasonable. Id.
As a threshold requirement, a claimant in a workers' compensation action must establish "personal injury by accident arising out of and in the course of his employment." La. R.S. 23:1031(A). Thus, in order for a claimant to be entitled to recover workers' compensation benefits, he must prove, by a preponderance of the evidence, that a work-related accident occurred and that an injury was sustained. A claimant's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident, and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Jackson v. Savant Insurance Company, 96-1424, p. 3 (La.App. 1 Cir. 5/9/97), 694 So.2d 1178, 1180. See also Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La.1992).
In workers' compensation cases, a disability is presumed to be the result of the work-related accident if the claimant was in good health before the accident, and the symptoms of the disability appear after the accident and continue to manifest themselves. This presumption is available when sufficient medical evidence is introduced to show a reasonable possibility of a causal connection between the disability and the work-related accident, or that the nature of the accident raises a natural inference that such a causal connection exists. LeBlanc v. Cajun Painting Inc., 94-1609, p. 10 (La.App. 1 Cir. 4/7/95), 654 So.2d 800, 807, writs denied, 95-1706, 95-1655 (La.10/27/95), 661 So.2d 1349, 1350. Thus, when there is proof of an accident and a following disability, without an intervening cause, it is presumed that the accident caused the disability. Jackson, 96-1424 at 3, 694 So.2d at 1180. Additionally, where the employee suffers from a preexisting medical condition, he may still prevail if he proves the accident aggravated, accelerated, or combined with the disease or infirmity to produce a disability for which compensation is claimed. Peveto v. WHC Contractors, 93-1402, p. 2 (La.1/14/94), 630 So.2d 689, 691. Whether an employee met his burden depends upon the totality of the evidence, including lay and medical testimony. Tate v. L & A Contracting, 26,110, p. 5 (La.App. 2 Cir. 9/21/94), 643 So.2d 263, 267, writ denied, 94-2834 (La.1/27/95), 649 So.2d 385.

*599 TEMPORARY TOTAL DISABILITY BENEFITS
In its first two assignments of error, Wal-Mart attacks the award of temporary total disability benefits (TTD) in this case, alleging that Ms. Thomas failed to carry her burden of proving a medical connexity between the work-related accident and her right knee condition. Further, Wal-Mart contends that the workers' compensation judge erred in not specifying the duration of the TTD benefits.
An employee is entitled to temporary total disability benefits (TTD) if he sustains a work-related injury "producing temporary total disability ... to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience." La. R.S. 23:1221(1)(a). When such an employee is not working, TTD compensation is proper "only if the employee proves by clear and convincing evidence, unaided by any presumption of disability," that he is physically unable to engage in any employment or self-employment, "including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain." La. R.S. 23:1221(1)(c). To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Bank of Winnfield and Trust Company v. Collins, 31,473, pp. 4-5 (La.App. 2 Cir. 2/24/99), 736 So.2d 263, 266.
In the instant case, the record shows Ms. Thomas reported the accident to her employer on the day it occurred. Thereafter, Ms. Thomas began complaining of right knee pain. She initially sought medical treatment associated with this injury on October 24, 2000, and was advised to stay off of work for two days. On October 26, 2000, Ms. Thomas was released to return to light duty work at Wal-Mart. Ms. Thomas continued to perform her duties at Wal-Mart until December 27, 2000, when Dr. Wiltz advised her to stop working. According to Ms. Thomas' medical records, this was due primarily to Ms. Thomas' "description of increased backache while operating her motorized cart," which had been provided to assist her with her duties at Wal-Mart. However, there is also evidence that Ms. Thomas was still experiencing right knee pain at this time and was unable to walk more than 50 to 100 feet without having to stop and rest. Dr. Wiltz treated Ms. Thomas through March 19, 2001, at which time he provided Ms. Thomas with a work excuse keeping her off of work through June 18, 2001.
Dr. Fitter treated Ms. Thomas for complaints of right knee pain and lower back pain from November 15, 2000, at which time his diagnosis was that Ms. Thomas had a sprained right knee and significant degenerative changes, through March 23, 2001, at which time Dr. Fitter discussed the possibility of Ms. Thomas returning to light duty work at Wal-Mart. With regard to Ms. Thomas' treatment and prognosis, Dr. Fitter continually referred to her "multiple pre-existing conditions," noting that venous insufficiency in both legs and her severe overweight condition "have seriously complicated and prolonged her management." Dr. Fitter was of the opinion that as of February 13, 2001, Ms. Thomas had completely recovered from the right knee injury sustained in the October work-related accident and had reached maximum medical improvement. Dr. Fitter noted that Ms. Thomas remained limited primarily by her pre-existing *600 medical conditions. Nonetheless, Dr. Fitter agreed with Dr. Wiltz that Ms. Thomas should not return to work, authorizing that she stay off of work through March 15, 2001.
Considering the evidence as a whole, both lay and medical, we are satisfied that Ms. Thomas sustained a work-related injury on October 22, 2000. The possibility of a causal connection between the work accident and Ms. Thomas' disabling condition is reasonable. Accordingly, we find no manifest error in the workers' compensation judge's finding that Ms. Thomas has satisfied her burden of proving by clear and convincing evidence that she was disabled and entitled to receive TTD benefits during the time she was unable to work as a result of this work-related injury. Thus, the issue becomes the duration of any such award. As noted previously, the judgment rendered by the workers' compensation judge on April 12, 2002, does not include a specified duration within which Ms. Thomas was to be paid TTD benefits.
Louisiana Revised Statutes 23:1221(1)(d) provides as follows with regard to the duration of an award of TTD benefits:
An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required.
Furthermore, it is well settled that even the claimant who can perform only sedentary or light duty work is not entitled to TTD benefits. Fisher v. Lincoln Timber Company, 31,430, p. 11 (La.App. 2 Cir. 1/24/99), 730 So.2d 973, 980; Holden v. International Paper Company, 31,104, p. 2 (La.App. 2 Cir. 10/28/98), 720 So.2d 442, 444, writ denied, 98-2956 (La.1/29/99), 736 So.2d 834.
When asked at trial about whether she had returned to work at Wal-Mart, Ms. Thomas indicated she had not, noting that Dr. Wiltz had not released her to return to work because of her back and knee pain. Ms. Thomas testified further that she was disabled and could not work at all. Ms. Thomas was later asked if she would consider returning to work at Wal-Mart if Wal-Mart could offer her a job answering the phone. She responded as follows: "No, sir, because I'm getting my disability."[3] When pressed further about whether she had any interest in returning to gainful employment, Ms. Thomas indicated that because of her back pain, she did not think she would ever be able to work again.
According to the record, Ms. Thomas last sought medical attention for the incident in question on March 23, 2001, when she saw Dr. Fitter and discussed the possibility of returning to light duty work at Wal-Mart. Ms. Thomas' last visit to Dr. Wiltz was on March 19, 2001, at which time Dr. Wiltz provided her with a work excuse for the period from March 19, 2001 through June 18, 2001. The trial of this matter was not held until March 8, 2002, almost an entire year after Ms. Thomas' last documented visit to Dr. Fitter. There is nothing in the record before us to suggest that during this one year period Ms. Thomas received any medical treatment associated with the injury she sustained on October 22, 2000, or required any "continued, *601 regular treatment by a physician." See La. R.S. 23:1221(1)(d). Consequently, we cannot find that the record supports an award of TTD benefits past June 18, 2001, the latest date given by Dr. Wiltz with regard to Ms. Thomas' work status. Moreover, because Ms. Thomas did, in fact, perform light duty work at Wal-Mart from the time of the accident through December 27, 2000, Ms. Thomas was not entitled to receive TTD benefits until December 27, 2000, the date on which Ms. Thomas was disabled to the point that she was "physically unable to engage in any employment." See La. R.S. 23:1221(1)(c). Thus, we amend the judgment of the workers' compensation judge to reflect that Ms. Thomas is entitled to receive TTD benefits commencing on December 27, 2000, and terminating effective June 18, 2001.[4] Judgment will be rendered accordingly.

PENALTIES AND ATTORNEY FEES
In its final assignment of error, Wal-Mart contends the workers' compensation judge erred in finding it was arbitrary and capricious in its handling of Ms. Thomas' claim and in awarding penalties and attorney fees. Wal-Mart alleges that there are "substantial substantive and ongoing disputes regarding [Ms. Thomas'] demands for indemnity benefits and medical benefits." Noting the substantial and legitimate disputes over the extent of work-related injury and/or work-related disability, Wal-Mart asserts that the judge's award of penalties and attorney fees should be vacated and reversed. Finding no error in the judge's award of penalties and attorney fees under the circumstances of this case, we disagree with Wal-Mart's argument in this regard.
Statutes providing for penalties and attorney fees are penal in nature and must be strictly construed. Haws v. Professional Sewer Rehabilitation, Inc., 98-2846, p. 9 (La.App. 1 Cir. 2/18/00), 763 So.2d 683, 690. Pursuant to La. R.S. 23:1201(F), a workers' compensation claimant is entitled to penalties and attorney fees if an employer fails to timely pay compensation benefits unless the claim is reasonably controverted or such nonpayment results from conditions over which the employer or insurer had no control. The test to determine whether the claimant's right to benefits has been reasonably controverted is set forth in Watson v. Amite Milling Co., Inc., 560 So.2d 902, 906 (La.App. 1 Cir.), writ denied, 567 So.2d 614 (La.1990), citing Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363, 367 (La.App. 3 Cir.1985), as follows:
[G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. This test requires a close analysis of each workers' compensation case.
Whether the refusal to pay or the discontinuation of benefits warrants the imposition of penalties and attorney fees is a factual question that will not be disturbed upon review in the absence of manifest error. Whiddon v. Livingston Parish Council, XXXX-XXXX, p. 7 (La.App. 1 Cir. *602 9/28/01), 809 So.2d 421, 427, writ denied, 2001-2893 (La.1/25/02), 807 So.2d 837. A determination of whether a denial of compensation benefits was warranted depends primarily on the facts existing and known at the time that benefits are denied. The court must consider whether there was a "reasonable" basis for a dispute as to the employee's entitlement to benefits. Goodman v. Manno Electric, Inc., 2001-2863, p. 5 (La.App. 1 Cir. 11/8/02), 835 So.2d 697, 701.
After a thorough review of the record, we cannot say that the workers' compensation judge was manifestly erroneous in awarding Ms. Thomas penalties and attorney fees. Based on the information known to Wal-Mart concerning Ms. Thomas' disability and work status, there was no reasonable basis for Wal-Mart's dispute as to Ms. Thomas' entitlement to benefits. Thus, Wal-Mart's contention that penalties and attorney fees were not warranted because of a bona fide dispute as to Ms. Thomas' entitlement to benefits is completely without merit.

CONCLUSION
For the above and foregoing reasons, we affirm the judgment insofar as it found a compensable work-related injury, awarded TTD benefits to Ms. Thomas, and assessed penalties and attorney fees for Wal-Mart's arbitrary and capricious handling of this claim. We amend the judgment, however, to award TTD benefits to Ms. Thomas commencing on December 27, 2000, and terminating effective June 18, 2001. All costs associated with this appeal are assessed against defendant-appellant, Wal-Mart Stores, Inc.
AMENDED IN PART AND AFFIRMED AS AMENDED.
NOTES
[1] Dr. Fitter's notes indicate that Ms. Thomas had not worked since December 7, 2000. However, according to the records from Dr. Wiltz, Ms. Thomas' first visit with him was on December 20, 2000. Moreover, the earliest notation from Dr. Wiltz that Ms. Thomas be excused from work is dated December 27, 2000.
[2] In his progress notes for December 20, 2000, and throughout his records, Dr. Wiltz refers to Ms. Thomas' knee condition as a "fracture of the right patella." However, there is nothing in the record before us to support this diagnosis. In fact, the October 24, 2000 x-ray of Ms. Thomas' right knee shows no signs of any fracture. Further, just two weeks after the incident in question, Dr. Albert's diagnosis was that Ms. Thomas had sustained a contusion to her right knee.
[3] According to the record, Ms. Thomas began receiving $853.00 monthly in social security disability benefits in June 2001.
[4] At this time, we pretermit any discussion as to whether Ms. Thomas may be entitled to another type of benefit such as supplemental earnings benefits. That issue was never presented to the workers' compensation judge. Therefore, the record contains no evidence from which to make such a determination.