631 So.2d 1238 (1994)
Carl BALDWIN
v.
GREATER LAKESIDE CORPORATION and Royal Insurance Company.
No. 93-CA-768.
Court of Appeal of Louisiana, Fifth Circuit.
January 25, 1994.
*1239 J. Paul Demarest, Michelle R. Demarest, Favret, Demarest, Russo & Lutkewitte, New Orleans, for plaintiff/appellee.
Jeffrey C. Napolitano, Lawrence B. Frieman, New Orleans, for defendants/appellants.
Before DUFRESNE, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
In this worker's compensation case, defendants appeal a judgment awarding plaintiff compensation for temporary total disability and penalties and attorney's fees. Appellants contend that the hearing officer erred in finding appellee temporarily totally disabled, in calculating appellee's compensation rate, in failing to credit appellants for overpayments to appellee and in assessing penalties and attorney's fees against appellants. For the following reasons, we affirm.

FACTS
On August 24, 1988, while in the course and scope of his employment as a roofer with appellant, Greater Lakeside Corporation, appellee, Carl Baldwin, sustained injuries. Mr. Baldwin was carrying two five gallon buckets of hot melting tar across the wet roof of the Lakeside Shopping Center when he slipped, causing the tar to splash onto his arms, neck, face, lower abdomen and back. Mr. Baldwin sustained second and third degree burns *1240 over these areas of his body. He was taken to the East Jefferson General Hospital emergency room where he was first seen by Dr. John Church, a specialist in plastic and reconstructive surgery. Because Dr. Church was scheduled to leave town shortly thereafter, he transferred Mr. Baldwin to the care of his colleague, Dr. George Linder.
On September 2, 1988, Dr. Linder performed surgery on Mr. Baldwin, involving debridement of the third degree burn wounds on Mr. Baldwin's arms as well as the burns on Mr. Baldwin's neck, chin and lower lip. Skin was taken from Mr. Baldwin's left thigh and grafted onto the burns on his arms. After discharge, Mr. Baldwin underwent physical therapy at East Jefferson in an attempt to restore full motion to his wrist and elbow, two areas where he suffered the most serious burns and subsequent scarring.
Since the surgery, Mr. Baldwin has developed extensive hypertrophic scars (keloids) over the burned areas of his body. The scars limit the use of his arms in the elbow and wrist area. He was prescribed "Jobst" garments which apply constant pressure to the scarred areas in an attempt to reduce the height of the scarring and improve mobility. The scarring has been resistant to the Jobst garments, however.
Because of Mr. Baldwin's continuing problems, Dr. Church resumed treatment of Mr. Baldwin. On July 16, 1990, Dr. Church performed a second surgery which involved excision of the hypertrophic burn scars on both of Mr. Baldwin's arms, skin grafts of those areas, excision of a hypertrophic scar on his left earlobe, and injections of kenalog (a steroid material) into the hypertrophic burn scars on his arms, chest and neck. Mr. Baldwin resumed wearing the Jobst garments. He underwent further monthly kenalog injections as well as treatment with "Silastic Gel Sheeting" in an attempt to make his scars less noticeable and less symptomatic with pain and itching. These treatments have had very limited success, however.
After his accident, Carl Baldwin began receiving temporary total disability benefits in the amount of $146.67 per week. These benefits were terminated on October 24, 1991, when Lakeside's compensation insurer, appellant Royal Insurance Company, concluded that Mr. Baldwin was no longer disabled and was able to earn 90% of his pre-injury wages. After a one-day trial on the merits on February 11, 1993, before an Office of Workers Compensation Administration hearing officer, Mr. Baldwin was awarded temporary total disability benefits in the amount of $146.67 per week. Mr. Baldwin was also awarded past-due benefits from October 24, 1991, together with a 12% penalty on each payment and legal interest from due date until paid. Mr. Baldwin was further awarded $3,000.00 in attorney's fees for the defendants' arbitrary and capricious termination of benefits. Defendants suspensively appeal, alleging five assignments of error:
1. The Trial Court erred in finding that Baldwin was still temporarily totally disabled as of October 24, 1991.
2. The Trial Court erred in finding that the employer failed to prove availability of employment appropriate for Baldwin.
3. The Trial Court erred in calculating the compensation rate at $146.67 per week when the employee had an average weekly wage of only $136.13 per week.
4. The Trial Court erred in failing to award a credit to the employer for compensation benefits overpaid to Baldwin.
5. The Trial Court erred in finding that the employer was arbitrary and capricious in terminating benefits, and in awarding penalties and attorneys' fees against the employer.

DISCUSSION
In their first two assignments of error, appellants argue that the testimony of Drs. Church and Dieffenbach (another specialist in plastic and reconstructive surgery who examined Mr. Baldwin) proves that Mr. Baldwin's condition is permanent, not temporary, that appellants met their burden of proving employment generally available to Mr. Baldwin, and that the hearing officer erred in awarding temporary total disability. We disagree. Dr. Church (testifying via a July 7, 1992 deposition) stated that while he noted on August 8, 1991 that Mr. Baldwin's scars had reached maximum improvement, *1241 he refused to say Mr. Baldwin had reached maximum medical improvement. Dr. Church felt that Mr. Baldwin's pain and itching (which are his two most significant problems) will slowly get better and go away. Dr. Church also felt that Mr. Baldwin's range of motion in his elbow and wrist would improve through continued use of the Jobst garments. Dr. Church further stated that he has not discharged Mr. Baldwin from his care.
Dr. Dieffenbach testified at trial that Mr. Baldwin's continued pain, itching and intolerance to heat in the scarred areas of his body are expected. He testified that genetically, Mr. Baldwin is more prone to develop keloid scars than most people, as evidenced by keloids developing on his left thigh, the area where the skin grafts were taken, but where no burns had occurred. Dr. Dieffenbach further testified that in his present condition, Mr. Baldwin would be difficult to employ in a physical job because his scarring could break down at any time. Dr. Dieffenbach explained that keloids do not have sweat glands, so any physical activity would make Mr. Baldwin's keloids itch. Compounding this problem are the Jobst garments, which Mr. Baldwin needs to wear to flatten the scars and to help hide the scars when he is in public, but which act as an insulator, holding heat in and causing further itching.
Both doctors believed that Mr. Baldwin is able to work in a non-physical capacity as long as he is not exposed to heat. At trial, Ms. Sharon Huhner, a vocational consultant for Crawford Health and Rehabilitation, testified. She interviewed Mr. Baldwin, discussed job capabilities with Dr. Church and conducted a labor market survey. In October of 1991, Dr. Church approved positions which he felt Mr. Baldwin was capable of performing, including a security guard (with some restrictions), a photocopy machine operator, a baggage claim attendant, an outside deliverer, a dispatcher, and a ticket taker/usher. Using this information, Royal Insurance asked Ms. Huhner to close her file on Mr. Baldwin and on October 24, 1991, his worker's compensation benefits were terminated. In May of 1992, Ms. Huhner was asked by Royal Insurance to reopen her file on Carl Baldwin, and in July of 1992, she referred three job leads to him. Mr. Baldwin testified that he applied for the first job, but never got a response and that the remaining two employers told him that they were not hiring at that time. Thereafter, Royal Insurance again asked Ms. Huhner to close her file on Mr. Baldwin.
The issue of disability is determined by the totality of the evidence, including both lay and medical testimony. On appellate review, the hearing officer's findings of work-connected disability are entitled to great weight. They should not be disturbed where there is evidence before the trier of fact, which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the hearing officer's findings, unless clearly wrong. The reviewing court should not disturb reasonable inferences of fact by the hearing officer, even though the reviewing court is of the opinion that other evaluations and inferences are as reasonable. Guillory v. Soloco, Inc., 570 So.2d 139, 142 (La.App. 3d Cir.1990); citing Charles v. Aetna Casualty & Surety Co., 525 So.2d 1272 (La.App. 3d Cir.1988), writ denied, 531 So.2d 480 (La.1988).
After the February 11, 1993 trial on the merits, the hearing officer found that Mr. Baldwin was temporarily and totally disabled, and that because of the date of his accident in 1988, he fell under the odd lot doctrine.
A claimant is considered temporarily totally disabled under the odd lot doctrine when he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist. An odd lot claimant need not be absolutely helpless to qualify for total disability. If the claimant can prove that his physical condition, mental capacity, education, training, age, or other factors combined place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the odd lot category. This satisfies his burden of proving that he should be awarded benefits for total disability. The employer or insurer must then show that some form of gainful occupation is regularly *1242 and continuously available to the employee within reasonable proximity to the employee's residence.

Lemoine v. Schwegmann Giant Supermarkets, 607 So.2d 708, 711 (La.App. 4th Cir.1992), writ denied, 609 So.2d 258 (La. 1992); citing Guillory, supra.
At trial, Mr. Baldwin testified about the pain and itching that he suffered most of the time from the extensive keloid scars which developed after he was burned by the tar. He testified that he frequently has trouble sleeping and his scars constantly cause him to itch. Physical activity increases his itching. His testimony was substantiated by the testimony of Dr. Church and Dr. Dieffenbach, who went into great detail at trial concerning Mr. Baldwin's keloid scars and the continuing problems they have caused him.
We agree with the hearing officer that Mr. Baldwin made out a prima facie case for classification in the odd lot category. Thereafter, appellants needed to show that some form of gainful occupation is regularly and continuously available to Mr. Baldwin within reasonable proximity to his residence. All appellants showed at trial was that Dr. Church approved a list of positions he felt Mr. Baldwin was capable of performing in October of 1991 and Mr. Baldwin was given three job leads in July of 1992, none of which were shown regularly and continuously available to Mr. Baldwin. After a thorough review of the record, we cannot say that the hearing officer was clearly wrong in finding that Mr. Baldwin is temporarily and totally disabled under the odd lot doctrine.
In appellants' third and fourth assignments of error, they argue that Mr. Baldwin's compensation rate was incorrectly calculated and that they are entitled to a credit for overpayment. An injured worker's average weekly wage is determined by applying LSA-R.S. 23:1021(10)(a), which provides:
Hourly wages.
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; or
(ii) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident; or
(iii) If the employee is paid on an hourly basis and the employee is a part-time employee, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury.
Appellants assert that the hearing officer incorrectly used subsection (i) to calculate appellee's compensation rate. They contend that the hearing officer should have used subsection (ii), arguing that prior to his accident, Mr. Baldwin regularly, and at his own discretion, worked less than forty hours per week. To support this argument, appellants offer the testimony of Ms. Donna Mumphrey, the special projects manager for Greater Lakeside Corporation. Ms. Mumphrey testified at trial about Mr. Baldwin's earnings records prior to his accident. She testified that work was available to Mr. Baldwin on a forty hour per week basis, but that he only worked one forty hour week from January through July 1988. On cross-examination, Ms. Mumphrey admitted that she was not Mr. Baldwin's supervisor and that she was not aware of any actions taken against Mr. Baldwin for not working more than he should have.
Mr. Baldwin testified at trial that he was employed as a roofer by Lakeside beginning in November of 1987, and that he worked as many hours as he was offered. He testified he could not work when it was raining, and he would either be sent home or told to wait until the rain stopped. He testified that he was never reprimanded for not being at work and was always willing to work forty hours per week. The hearing officer found that appellants failed to show Mr. Baldwin regularly, and at his own discretion, worked less than forty hours per week.
*1243 In finding that Mr. Baldwin's compensation rate should be calculated under LSA-R.S. 23:1021(10)(a)(i) using forty hours per week, the hearing officer relied more on Mr. Baldwin's testimony than on that of Ms. Mumphrey, who admitted that she was not Mr. Baldwin's supervisor and had no personal knowledge of why he worked less than forty hours per week prior to his accident. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Rosell v. ESCO, 549 So.2d 840 (La.1989). Accordingly, the hearing officer did not err in calculating Mr. Baldwin's compensation rate.
Finally, appellants argue the hearing officer erred in finding that they acted arbitrarily and capriciously for terminating Mr. Baldwin's benefits in October of 1991 and erred in awarding $3,000.00 in penalties and attorney's fees. The hearing officer's determination that an award of penalties and attorney's fees is warranted is based on a finding of fact and his decision should not be disturbed unless it is clearly wrong. Williams v. Union Tank Car Co., 524 So.2d 858 (La.App. 3d Cir.1988). The record shows that Mr. Baldwin's benefits were terminated once Dr. Church approved a list of positions he felt Mr. Baldwin was capable of performing. Taking into consideration appellants' knowledge of the severity of Mr. Baldwin's injuries, the extensive resulting keloid scars and the pain, itching and heat intolerance associated with them, the hearing officer found appellants acted arbitrarily and capriciously by terminating Mr. Baldwin's benefits in such a manner and assessed $3,000.00 in penalties and attorney's fees against them. After a thorough review of the record, we cannot say that the hearing officer was clearly wrong in so finding.
For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed against appellants.
AFFIRMED.