2KLINE, J.
This is an appeal from a judgment of the Office of Worker’s Compensation in favor of employer, Ideal Rentals, Inc., and its insurer, CNA, dismissing claims of the claimant, Jack L. Boudreaux, Jr. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Jack Boudreaux was employed by Ideal Rentals, Inc. (“Ideal”), on August 31, 1988, when he was injured during the course and scope of his employment. At that time, Continental Casualty American Casualty Company of Reading, PA (a CNA Insurance Company) provided Ideal with workers’ compensation insurance. Weekly compensation benefits were paid to Mr. Boudreaux until he returned to work. The weekly compensation benefits were terminated, but the obligation to pay Mr. Bou-dreaux’s medical expenses remained.
Mr. Boudreaux injured his back during the subject work-related accident. As a result, he had undergone three back surgeries. His treating physician is Dr. Hector Ruiz. In July of 1999, Dr. Ruiz prescribed Celebrex for Mr. Boudreaux, because he continued to experience back pain. One of the side effects of Celebrex is internal bleeding. On July 28, 1999, Mr. Boudreaux noticed that his stool had black specks in it, which he determined to be an indication of possible internal bleeding. Mr. Boudreaux was a licensed practical nurse and knew from reading about the drug that internal bleeding was a possible side effect. The next morning, he had another bowel movement and noted that the stool was now nothing but a black watery substance. As a result he contacted Dr. Ruiz’s office, and was told to come into the office. When Mr. Bou-dreaux arrived at Dr. Ruiz’s office, Dr. Ruiz drafted admission orders for Mr. Boudreaux to be hospitalized at Lakewood Hospital in Morgan City. Mr. Bou-dreaux went directly to Lakewood Hospital from the doctor’s office.
While at Lakewood, Dr. Thomas Birriel, a general surgeon, was consulted. Dr. Birriel performed three surgeries during Mr. Boudreaux’s hospitalization at Lakewood. The surgeries consisted of two endoscopic attempts to stop the bleeding and then a laparotomy. Mr. Boudreaux was at Lakewood from July 29, |a1999 to August 1, 1999. None of the three surgeries were successful at stopping the internal bleeding. As a result, Mr. Boudreaux was transported to the Ochsner Foundation Hospital in New Orleans so that an ang-iography could be performed. One was not available at Lakewood. While at Ochs-ner, Mr. Boudreaux’s internal bleeding subsided and no additional procedures were performed. He was discharged from Ochsner on August 5,1999.
Mr. Boudreaux submitted the medical expenses resulting from his internal bleeding to the workers’ compensation insurer. A written demand for payment of the medical bills was received by the insurance company on January 30, 2001. The insurance company refused payment.
On July 26, 2001, Mr. Boudreaux filed a disputed claim for compensation, alleging the insurer’s failure to pay medical bills and that attorney’s fees and penalties were owed. Appellees filed an answer on August 15, 2001, asserting, among other things, that Mr. Boudreaux was limited to an aggregate total of $1,000.00 for unapproved medical treatment. Appellees also asserted an affirmative defense stating that Mr. Boudreaux failed to notify them *922 of his ongoing medical care and failed to have medical treatment timely approved.
A trial was held on the merits on December 14, 2001. After the trial, the workers’ compensation judge made the following factual findings:
1. Prior to filing of the current Disputed Claim for Compensation, neither the claimant nor his health care providers sought or obtained pre-approval from defendant for any medical treatment since August 81,1996.
2. The claimant testified American Casualty Company paid him $1,869.00, by check dated August 18, 1998, for reimbursement of medical expenses incurred in October and November 1996.
3. On the morning of August 29, 1999, the claimant visited Dr. Hector Mario Ruiz, general practitioner, complaining of rectal bleeding. In his deposition, Dr. Ruiz testified he decided to place the claimant in the hospital for observation and treatment. Dr. Ruiz further testified, the claimant did not appear clammy or flushed when he presented that morning, which would have indicated a true emergency situation and he did not show decreased hemoglobin or hemato-crit until the following day, indicating significant blood....
4. The Lakewood Hospital discharge summary reflects that the claimant was admitted and observed. The following day his hemoglobin and hematocrit dropped, confirming Dr. Ruiz’[s] testimony regarding the nature of the admission. Dr. Ruiz’[s] testimony does not contradict the hospital record that this was a non-emergency admission. Dr. Ruiz never testified that the | claimant’s admission was of an emergency nature. He testified that it would be if the he-matocrit and hemoglobin counts were low, but they were not at the time. Dr. Ruiz also testified the claimant had time to go home and get whatever personal things he would need in the hospital.
5. The claimant testified he was given an order for immediate intake into the hospital, but such an order appears contrary to the testimony of Dr. Ruiz and the hospital records admitted into evidence. Dr. Ruiz’[s] office had time to pre-certify the admission.
6. The claimant underwent the initial scope procedure at Lakewood Hospital about twenty-four hours after Dr. Ruiz first saw him. Ultimately, the claimant was transferred to Ochsner’s to undergo angiography, which was not available at Lakewood Hospital.
7. Neither the claimant nor his health care providers sought or obtained pre-approval from the defendants for any medical treatment, despite the claimant’s health care providers having obtained pre-approval from the claimant’s health care insurer.
8. Sixteen months after the fact, and almost four and one-half years after the last known treatment for a work-related injury, the claimant first notified the defendants of his claim for reimbursement of health care costs for the August/September 1999 treatment by letter from attorney Allen McElroy, Jr. This letter demanded payment of medical expenses, a demand supported solely with medical bills. No indication of a medical emergency was provided. The letter and attachments did not provide any indication of the alleged emergency nature of the treatment.
9. The [defendants’] first notice of immediate hospitalization of the claimant following the exam by Dr. Ruiz was received the day of trial when the claimant contradicted Dr. Ruiz’[s] testimony and stated that he went directly to the emergency room from Dr. Ruiz’[s] office.
*923 A judgment was rendered by the WCJ, stating the following:
After considering the law, the record, the evidence, the exhibits and the argument of counsel in this matter, this Court renders Judgment in favor of defendant, Ideal Rentals, Inc., and against claimant, Jack L. Boudreaux, Jr. Therefore:
IT IS ORDERED, ADJUDGED AND DECREED that ... LSA-R.S. 28:1142 as it read August 31, 1988 is the law applicable to this claim.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the claimant, Jack L. Boudreaux, Jr., and the health care provider, Dr. Hector Ruiz, failed to carry their burden of proving the claimant’s treatment was of an emergency nature.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the claimant, Jack L. Boudreaux, Jr., and the health care provider, Dr. Ruiz, failed to seek pre-approval for non-emergency medical care.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant reasonably controvert[ed] the workers’ compensation claim of Jack L. Boudreaux, and therefore, the claimant is not entitled to penalties and attorney fees.
|kIT IS FURTHER ORDERED, ADJUDGED AND DECREED that the workers’ compensation claim of Jack L. Boudreaux, Jr., is hereby dismissed with prejudice.
On January 16, 2002, Mr. Boudreaux filed a motion for a new trial. The WCJ denied this motion. From this judgment, Mr. Boudreaux appeals, asserting the following assignments of error:
1.[WCJ] made error in its failure to accept uncontradicted testimony of only medical expert witness that medical emergency required immediate treatment in the hospital.
2. [WCJ] erred in its failure to correctly apply the law and at least find that the initial doctor visit charge on morning of July 29,1999, was an emergency medical treatment.
3. [WCJ] made error in its failure to correctly apply the law and to find that a medical emergency existed which required treatment in the hospital at Lakewood Medical Center.
4. [WCJ] erred in its failure to correctly apply the law and to find that the transfer at 10:40 p.m. on a Sunday night and subsequent treatment at Ochsner Foundation Hospital was a medical emergency.
5. [WCJ] erred by failing to award penalty damages, attorney fees, expert witness fees and costs.
LAW AND DISCUSSION
Factual findings in a workers’ compensation case are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. For an appellate court to reverse a trier of fact’s factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact and that the record establishes that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the factfinder’s decision to credit a witness’s testimony must be given “great deference” by the appellate court. Rosell v. ESGO, 549 So.2d 840, 844 (La.1989). *924 Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may | fifeel that its own evaluations and inferences are as reasonable. Id.
The manifest error test requires the reviewing court to consider the record as a whole to ascertain whether the trier of fact’s findings constituted manifest error. Since the trier of fact’s findings are accorded great weight on appeal, the Louisiana Supreme Court has set forth a two-part test for use by appellate courts in applying the manifest error standard of review. First, the appellate court must conclude from the record that a reasonable factual basis does not exist for the trier of fact’s findings. Second, the appellate court must determine that the findings were clearly wrong based on the record. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
Louisiana Revised Statute 23:1203 A, prior to its amendment in 1997[2], provided that:
In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal.... The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less.
The statute specifically addresses an employer’s obligation to provide necessary medical care to an employee who has been injured at work. However, the statute also applies to health care providers seeking reimbursement for treatment of the injured employee. See Stewart v. Self-Insurer’s Bureau, 626 So.2d 34, 36-37 (La.App. 1 Cir.1993).
Mr. Boudreaux argues that the WCJ erred in determining that its medical treatment was not an emergency. At the time of Mr. Boudreaux’s accident and injury, La. R.S. 23:1142 provided in pertinent part:
A. Nonemergency care. Health care providers may not incur more than an aggregate total of one thousand dollars in nonemergency diagnostic testing or treatment without the mutual consent of the employer or its worker’s compensation insurer and the employee. Fees for nonemergency services of health care providers in excess |7of one thousand dollars shall not be an enforceable obligation against the employee or the employer or the employer’s worker’s compensation insurer unless all parties have agreed upon the diagnostic testing or treatment by the health care provider.
B. Emergency care. (1) In no event shall prior consent be required for any emergency procedure or treatment deemed immediately necessary by the treating health care provider. Any health care provider who authorizes or orders emergency diagnostic testing or treatment, when said diagnostic testing or treatment is held not to have been of an emergency nature, shall be responsible for all of the charges incurred in such diagnostic testing or treatment. *925 Said health care provider shall bear the burden of proving the emergency nature of the diagnostic testing or treatment. (2) Fees for those services of the health care provider held not to have been of an emergency nature shall not be an enforceable obligation against the employee or the employer or the employer’s worker’s compensation insurer unless all parties have agreed upon the treatment or diagnostic testing by the health care provider.
The statute requires that Ideal be notified as to the treatment and charges for it to be responsible for compensation over $1,000.00, unless the treatment was of an emergency nature. See Stewart v. Self-Insurer’s Bureau, 626 So.2d at 36-37; Anesthesia East v. CIGNA Insurance Company, 598 So.2d 1253, 1254 (La.App. 4 Cir.1992). In the instant case, it is undisputed that Ideal did not consent to and was not notified of the treatment of Mr. Boudreaux concerning his internal bleeding. Moreover, despite Dr. Ruiz’s contentions at the hearing that the treatment of Mr. Boudreaux was in the nature of emergency care, the WCJ determined that the treatment was not emergency treatment.
Under LSA-R.S. 23:1142, if the health care provider’s services are found to be of a non-emergency nature, any fees for the nonemergency services in excess of $1,000.00 shall not be an enforceable obligation against the employee, employer, or insurer unless all parties have agreed to the provider’s services. The burden of proof is on the claimant or the health care provider to show by a preponderance of the evidence that the medical services were necessary and to show the value of those services. See Stewart v. Self-Insurer’s Bureau, 626 So.2d at 36-37; Anesthesia East v. CIGNA Insurance Company, 598 So.2d at 1254.
In his deposition, Dr. Ruiz testified that he did consider the possibility that
Mr. Boudreaux could have internal bleeding as an emergency. He indicated that |sif the patient starts dropping hematocrit and hemoglobin, that could be a problem. He did admit, however, that upon initial examination of Mr. Boudreaux, Mr. Bou-dreaux did not have symptoms such as being clammy or flushed. Those symptoms, if they were present, would have prompted Dr. Ruiz to take Mr. Bou-dreaux’s blood pressure. If the blood pressure were low, that would have prompted him to call an ambulance. Dr. Ruiz defined an emergency situation as ultimate and life-threatening. He went on to describe that a mid-stream situation, as compared to one that is ultimate and fife-threatening, would be one in which a patient started to bleed, and the physician would take note that that condition is not normal and it cannot be allowed to continue for too long a time. Dr. Ruiz also mentioned that another possible treatment, seemingly as an alternative to surgery, could be to stop the medication that might be causing the internal bleeding, and then try mild treatments. Dr. Ruiz admitted that Mr. Boudreaux’s initial lab work showed results that might indicate that he had not lost enough blood to make him anemic. Dr. Ruiz also stated that he initially hospitalized Mr. Boudreaux to run some initial tests, for observation and to get a consult from Dr. Birriel, the physician who ultimately performed the endoscopes and laparotomy on Mr. Boudreaux. Although Mr. Boudreaux’s medical treatment might have reached a point of being “immediately necessary” some time while in Lakewood Hospital, there is also a reasonable basis for the WCJ’s finding that the medical condition and the treatment that ensued did not rise to the level of “immediately necessary” and an emergency at the time Mr. Boudreaux first visited Dr. Ruiz at his office and also at the time he was admitted into the hospital.
*926 After considering the facts pertaining to Mr. Boudreaux’s treatment, we are unable to find that the WCJ manifestly erred in finding that Mr. Boudreaux failed to prove his treatment was of an emergency nature, such that it constituted an emergency procedure or treatment deemed immediately necessary by the treating health care provider as required by LSA-R.S. 23:1142(C). A reasonable factual basis existed to support the WCJ’s findings. As a result, we cannot substitute our own judgment and find that the WCJ was manifestly erroneous or | flclearly wrong in its findings. As a result, we pretermit addressing the other assignments of error.
CONCLUSION
For the foregoing reasons, the judgment of the WCJ in favor of Ideal Rentals, Inc. and CNA is affirmed. All costs are assessed to appellant, Jack L. Boudreaux, Jr.
AFFIRMED.

. The Louisiana Workers' Compensation Act in effect on the date of the claimants injuries is controlling. Gilmore v. SGB Construction Services, Inc., 97-1669, p. 4 (La.App. 1 Cir. 5/15/98), 712 So.2d 663, 665.