950 So.2d 682 (2006)
Brad GUILLORY
v.
BOFINGER'S TREE SERVICE.
No. 2006 CA 0086.
Court of Appeal of Louisiana, First Circuit.
November 3, 2006.
*685 Debra Talbot Parker, Baton Rouge, Counsel for Defendants, Appellants/Appellees, Bofinger's Tree Service and Louisiana Workers', Compensation Corporation.
Michael B. Miller, Crowley, Counsel for Plaintiff, Appellant/Appellee, Brad Guillory.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
GUIDRY, J.
In this workers' compensation proceeding, defendants appeal a judgment awarding the claimant additional disability benefits, penalties and attorney fees. The claimant also appealed, seeking an increase in attorney fees.

FACTS AND PROCEDURAL HISTORY
In July 2003, Brad Guillory was hired by Bofinger's Tree Service (Bofinger's) as a full-time employee. His duties included cutting up, moving, and stacking tree limbs and trunks. On April 19, 2004, he injured his back when he bent over to lift a log, and felt a strain in his back. His best friend and co-worker, Chris Kibodeaux, who was working with him at the time, telephoned their boss, George Bofinger, and advised him of what had occurred. Bofinger went to the job site to talk to Guillory, who afterwards went home and remained there for a few days. He then attempted to return to work, but was unable to work because of severe pain. Kibodeaux took him to the emergency room at Summit Hospital in Baton Rouge, where he was given pain medication and released with instructions to see an orthopedist. Guillory requested authorization from Bofinger's insurer, the Louisiana Workers' Compensation Corporation (LWCC), to see Dr. Anil Nanda, an orthopedic surgeon. LWCC denied authorization.
Guillory filed a claim with the Office of Workers' Compensation Administration (OWC) against Bofinger's and LWCC, seeking an increase in the amount of his weekly disability compensation benefits and authorization to see Dr. Nanda. Trial on the merits was scheduled for February 21, 2005. However, on February 9, 2005, Debra T. Parker was substituted as counsel of record for defendants, and filed a motion to continue trial on the grounds *686 that she had just returned from maternity leave and needed additional time to prepare for trial. The motion was granted, and trial was rescheduled for May 23, 2005.
Defense counsel set a supplemental deposition of Guillory to be taken on April 11, 2005. However, his attorney responded with a motion to quash the deposition, which the OWC judge granted. On May 12, 2005, defense counsel filed a motion to compel discovery responses. Several days before trial, defense counsel also filed a motion to continue, alleging discovery was incomplete. Both motions were denied on the morning of trial.
Following trial, the OWC judge concluded Guillory was injured in the course and scope of his employment and rendered judgment granting him an increase in his temporary total disability benefits to $386.67 per week, beginning April 20, 2004, as well as $6,000 in penalties and $8,000 in attorney fees. The judgment further provided that Guillory was entitled to evaluation and treatment by Dr. Anil Nanda. Defendants and Guillory each appealed the judgment.

ASSIGNMENTS OF ERROR

Bofinger Tree Service and LWCC[1]
1. The trial court erred in denying the defendants' Motion to Compel and Motion to Continue.
2. The trial court erred in holding that claimant sustained a work-related accident.
3. The trial court erred in holding that claimant sustained an accident within the course and scope of his employment with Bofinger's.
4. The trial court erred in awarding claimant a new choice of physician.
5. The trial court erred in holding that claimant was entitled to a forty hour presumption in calculating his average weekly wage.
6. The trial court erred in holding that defendants were arbitrary and capricious in not paying the correct rate for mileage reimbursement.
7. The trial court erred in assessing penalties and attorney fees where the claim was clearly reasonably controverted in the choice of physician, average weekly wage, and mileage reimbursement.
Brad Guillory
1. The award of attorney fees should be increased due to the work performed in defending against defendants' appeal.

PRETRIAL MOTIONS
Defendants argue the OWC judge erred in quashing Guillory's supplemental deposition, and in denying their motions to compel discovery and to continue trial. They contend these rulings prevented them from fully investigating all pertinent issues. We disagree.
In workers' compensation cases, discovery shall be governed by La. C.C.P. art. 1421 et seq. L.A.C. 40:I.5915. A party generally may obtain discovery of any information that is relevant to the subject matter involved in the pending action. La. C.C.P. art. 1422. The court has broad discretion in ruling on discovery matters, including the discretion to deny discovery. La. C.C.P. art. 1426; Laburre v. East Jefferson General Hospital, 555 So.2d 1381, *687 1385 (La.1990). In its discretion, a court can refuse or limit discovery of matters not relevant, unreasonably vexatious, or tardily sought. Lehmann v. American Southern Home Insurance Company, 615 So.2d 923, 925 (La.App. 1st Cir.), writ denied, 617 So.2d 913 (La.1993). See also Belonga v. Crescent City Dodge, L.L.C., XXXX-XXXX, p. 2 (La.3/9/01), 781 So.2d 1247, 1248. Moreover, in order that trials may proceed more orderly and expeditiously, it is well within a court's discretion to set a cut-off date for pretrial motions. See La. C.C.P. art. 1631 A; Brown v. Associated Insurance Consultants, Inc., 95-1451, 95-1452, 95-1453, p. 7 (La.App. 1st Cir.4/4/96), 672 So.2d 324, 328-29, writ denied, 96-1106 (La.6/7/96), 674 So.2d 970.
The record indicates a deposition was taken of Guillory on November 4, 2004. His attorney filed a motion to quash the taking of a supplemental deposition on the ground that no reasonable basis had been shown for a second deposition. At the motion hearing, defense counsel indicated a major reason a supplemental deposition was needed was that the attorney who originally represented defendants was not as thorough at the first deposition as she would have been in exploring a number of issues. She also stated she wanted to get information on Guillory's current status, and did not like to go to trial without having her own "take" on the claimant's credibility. In granting the motion to quash, the OWC judge stated:
The court finds that the deposition was taken on November 4, 2004. LWCC and it's insured were represented at the time by Sammy Henry who had the opportunity to ask whatever questions he thought would be appropriate at that time.
At this time, to request a supplemental deposition, the court finds it would be basically getting a second bite at the apple. Probably a lot of things would end up being rehashed. The court finds no good cause has been shown to have the supplemental deposition. The motion to quash is granted. Another thing the court is considering is that the trial date is around the corner. . . .
Basically, defense counsel wanted to subject Guillory to the taking of a second deposition because she did not think her former colleague did a thorough job at the original deposition, and because she wanted an opportunity to judge Guillory's credibility. There were no allegations of new matters that had arisen or changes that had occurred in Guillory's condition in the approximately five-month period since his original deposition that would have warranted taking a supplemental deposition. Further, information as to Guillory's current status was contained in his medical records, which were available to defendants. Accordingly, we find no abuse of discretion in the OWC judge's refusal to allow the supplemental deposition.
We also find no abuse of the OWC judge's broad discretion in the denial of defendants' motion to compel on the basis it was untimely. The record reflects defendants' interrogatories and requests for production were propounded on September 22, 2004, and answered by Guillory in October 2004. However, defendants allege in their motion to compel that his responses were incomplete. While current defense counsel was not counsel of record at the time the responses were given, she was substituted as such on February 9, 2005. The next day, she filed a motion to continue on the grounds that she had insufficient time to prepare for trial, which was then scheduled for February 28, 2005. The motion was granted over the opposition of opposing counsel, giving her additional time to complete discovery and prepare for trial. Thus, defense counsel clearly had *688 adequate time to file a timely motion to compel, if she considered Guillory's original responses to be incomplete. The scheduling order provided that all pretrial motions must be filed and discovery must be complete thirty days prior to the May 23, 2005 trial. Nevertheless, despite this cut-off date, defense counsel waited until May 12, 2005, to file the motion to compel. Under the circumstances, the OWC judge was well within his discretion in denying the motion to compel as being untimely.
Our review likewise reveals no abuse of discretion in the denial of defendants' motion to continue. The motion was based on defendants' assertion that discovery was incomplete. At the motion hearing, defense counsel urged as an additional ground that Mohr Alexander, the LWCC claims adjustor in this matter, was unavailable for trial because of an emergency with her child.
None of the issues defense counsel wished to further investigate through additional discovery were new issues. The defense was accorded sufficient time to conduct discovery and, since the motion to compel was denied, there was no further discovery pending. We also note that Ms. Alexander, the LWCC adjustor, actually appeared at trial and testified. An OWC judge is vested with wide discretion in granting or denying a continuance, and his ruling will not be disturbed on appeal in the absence of clear abuse. Barrilleaux v. Cypress Bayou Casino, XXXX-XXXX, p. 3 (La.App. 1st Cir.3/28/03), 844 So.2d 326, 328. Given these circumstances, we find no abuse of discretion in the denial of defendants' motion to continue.

WORK-RELATED ACCIDENT
Defendants argue the OWC judge erred in finding Guillory was injured in a work-related accident because he was not a credible witness, there was no corroboration of his version of the accident, and his trial testimony was rebutted by the medical testimony and the testimony of his boss and the LWCC adjustor. Defendants contend Guillory's credibility is questionable because of his history of prior workers' compensation claims and back problems.
An injury is compensable under the Louisiana Workers' Compensation Act if it results from an accident arising out of and in the course of employment. Cade v. Safety Council of Louisiana Capital Area, XXXX-XXXX, p. 3 (La.App. 1st Cir.12/31/03), 868 So.2d 744, 746. The claimant bears the burden of proving a work-related accident by a preponderance of the evidence. Moore v. Popeye's Fried Chicken, 96-1889, p. 8 (La.App. 1st Cir.6/20/97), 697 So.2d 5, 9. A claimant's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the claimant's version of the incident, and (2) the claimant's testimony is corroborated by the circumstances following the alleged incident. Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La.1992); Thomas v. Wal-Mart, XXXX-XXXX, p. 8 (La.App. 1st Cir.5/9/03), 849 So.2d 592, 598. Whether a claimant has carried his burden of proof and whether the testimony is credible are questions of fact to be determined by the OWC judge. Cade, XXXX-XXXX at p. 3, 868 So.2d at 746.
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. For an appellate court to reverse the factual findings of an OWC judge, it must determine from the record that there is no reasonable factual basis for the findings and the findings are clearly wrong. Boudreaux v. Ideal Rentals, *689 Inc., XXXX-XXXX, p. 5 (La.App. 1st Cir.3/28/03), 844 So.2d 919, 923.
Guillory was the only witness who testified as to the occurrence of the accident. Nevertheless, his version of the accident was reasonable, and the OWC judge found it credible. We note that Guillory's veracity was at issue only to the extent that the circumstances did not corroborate his testimony or other evidence discredited or cast serious doubt upon his testimony. See Leonard v. James Industrial Constructors, XXXX-XXXX, p. 4 (La.App. 1st Cir.5/14/04), 879 So.2d 724, 727, writ denied, XXXX-XXXX (La.9/24/04), 882 So.2d 1139. In this case, the circumstances following the accident corroborated Guillory's version of the accident. First, Guillory's boss, specifically testified that he received a telephone call from Guillory's co-worker, Chris Kibodeaux, on the date of the accident advising him of its occurrence. In fact, Bofinger went to the jobsite at that time and spoke to Guillory. Further, after talking to his boss, Guillory went home for the remainder of the day and stayed home for several days because he was unable to work. He also sought medical treatment at an emergency room within only a few days of the incident, after he attempted to return to work and realized he was unable to do so because of the severity of his pain.
The record does not support defendants' assertion that the testimony of Guillory's boss and the LWCC adjustor, as well as the medical evidence, discredited and cast serious doubt upon his version of the accident. In fact, the testimony of Guillory's boss actually refuted defendants' claim that the accident was unreported. Further, the LWCC adjustor testified there was nothing in the LWCC file questioning the occurrence of the accident. In fact, in their answer to Guillory's disputed claim, defendants admitted that he had sustained a work-related accident.
The OWC judge's decision to accept Guillory's testimony regarding the occurrence of the accident is entitled to great deference on appeal. We conclude the judge's findings were reasonable in light of the record reviewed in its entirety and were not clearly wrong. Accordingly, we find no manifest error in the OWC judge's conclusion that Guillory was injured in an accident within the course and scope of his employment with Bofinger's.

FORTY-HOUR PRESUMPTION
Defendants assert the OWC judge erred in concluding Guillory was entitled to the forty-hour presumption provided by La. R.S. 23:1021(10)(a)(i)[2] in calculating his average weekly wage. They maintain La. R.S. 23:1021(10)(a)(ii) was applicable instead because Guillory regularly and at his own discretion worked less than forty hours per week.
The average weekly wage for an injured employee who is paid an hourly wage is determined by applying La. R.S. 23:1021(10)(a), which provides, in pertinent part:
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; or
(ii) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of his total earnings per week for the four *690 full weeks preceding the date of the accident; or
(iii) If the employee is paid on an hourly basis and the employee is a part-time employee, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury.
At trial, Guillory's boss, George Bofinger, testified he did not guarantee his employees forty hours a week of work, but informed them when hired that they were to work five days a week, weather permitting. However, he indicated it was difficult for them to work five days a week because the work they performed was very weather dependant. Although Guillory was guaranteed only $300 per week, he had been advised that he could work whenever Bofinger was working. Initially, Bofinger testified Guillory was a full-time employee. Later in his testimony, Bofinger stated that Guillory was not full-time if that meant working forty hours a week. Bofinger estimated Guillory missed work once or twice a week, due either to his own illness or that of his daughter. Guillory's trial testimony was in accord with that of Bofinger, except that he disputed the testimony that he usually missed work once or twice a week. He did not think he missed work that often.
The OWC judge gave the following oral reasons for concluding Guillory was entitled to the forty-hour presumption provided by subsection (i):
The court finds that the evidence shows that claimant was hired on a full time basis, that the claimant agreed to make himself available on a full time basis. There's no proof to the contrary, that the claimant was hired on a part time basis or any other note [sic]. The evidence shows that he was guaranteed a minimum of $300, but the evidence further shows that he was to be paid at the rate [of] $14.50 per hour. The court finds that the claimant is entitled to the 40 hour presumption, which equates to an average weekly wage of $580 and a corresponding temporary total disability rate of $386.69.
There was no evidence whatsoever that the defendant had informed the claimant that he had been hired at anything but full time and to be available on a full time basis. No documents were signed and there was no evidence of anything like that. Furthermore, there was no specific evidence shown as to what days the claimant took off of work on his own voluntary basis to reduce the $580 average weekly wage. Based upon this rate of pay and the correct temporary total disability rate, a penalty of $2,000 is assessed to defendants.
Our examination of La. R.S. 23:1021(10)(a) reveals that Guillory does not fit literally into any of the three subsections provided. Subsection (iii) clearly is inapplicable, because Guillory was not a part-time employee. La. R.S. 23:1021(9)[3] defines a part-time employee as an employee who as a condition of his hiring knowingly accepts employment that (1) customarily provides for less than forty hours per work week, and (2) is classified as part-time by the employer. Prior to trial, Bofinger had always considered Guillory to be a full-time employee, and had never informed him otherwise.
Therefore, we must decide which of the two remaining subsections better fits Guillory's situation. Subsection (ii) applies in situations where a full-time employee who was offered forty hours or more per week nevertheless regularly and at his own discretion *691 works less than forty hours per week. Defendants strenuously argue this subsection is applicable, both because Guillory regularly missed work at his own discretion and because his paychecks for the four weeks prior to his injury indicated he did not work forty hours in any of those weeks. However, we note the paychecks only show Guillory did not work forty hours a week for those weeks, but not the reason why. There was evidence that it was difficult for Bofinger's employees to work forty hours a week due to the weather-dependent nature of their work. A loss of work time due to weather is not at the employee's discretion. Additionally, the OWC judge found there was no specific evidence establishing what days Guillory took off on a "voluntary basis" so as to reduce his average weekly wage.
In reaching this conclusion, the OWC judge apparently accepted Guillory's testimony over that of Bofinger as to the frequency of Guillory's absences from work. The factfinder's decisions regarding the credibility of witnesses must be given "great deference" on appeal. When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel that its own evaluations and inferences are as reasonable. Thomas, XXXX-XXXX at pp. 7-8, 849 So.2d at 598. On the record before us, we find no manifest error in the OWC judge's implicit finding that Guillory did not regularly miss work at his own discretion so as to make subsection (ii) applicable.
Finally, we observe that subsection (i) also does not fit Guillory's situation literally, since he was never guaranteed forty hours or more per week. However, other courts faced with this dilemma have concluded that subsection (i) nevertheless should apply to employees in situations similar to that of Guillory. In East-Garrett v. Greyhound Bus Lines, 99-421, pp. 4-7 (La.App. 3rd Cir.11/3/99), 746 So.2d 715, 718-20, the employee knew when she was hired as a bus driver that she might work less than forty hours per week, but she had applied for a full-time position and was so classified by her employer. The Third Circuit affirmed the OWC judge's determination that subsection (i) was applicable because the record did not show the employee regularly and at her own discretion worked less than forty hours per week. Likewise, in Clark v. Schwegmann Giant Supermarket, 96-2301, pp. 12-16 (La.App. 4th Cir.1/13/99), 740 So.2d 137, 144-46, the Fourth Circuit concluded subsection (i) best fit the facts when the employee did not meet the statutory definition of a part-time employee, she was classified by the employer as full-time, and she did not customarily work less than forty hours at her own discretion. The court reached this conclusion even though the employee was never employed to work forty hours or more per week. Finally, in Baldwin v. Greater Lakeside Corporation, 93-768 (La.App. 5th Cir.1/25/94), 631 So.2d 1238, 1242-43, the injured employee was a roofer who testified he worked as many hours as he was offered, but could not work when it rained. The Fifth Circuit affirmed the application of subsection (i) to determine his average weekly wage, since it was not shown he regularly and at his own discretion worked less than forty hours per week.
In this case, Guillory was never guaranteed forty hours per week. However, he was classified as full-time by his employer, who also indicated his employees were expected to work five days a week, weather permitting. Additionally, the OWC judge rejected defendants' contention that Guillory regularly worked less than forty hours per week at his own discretion. Under *692 these circumstances, we agree with the reasoning reflected in East-Garrett, Clark, and Baldwin that, although subsection (i) may not literally fit the situation of an employee in a position such as Guillory's, it fits best among the three choices provided by La. R.S. 23:1021(10)(a). Accordingly, we find no error in the OWC judge's calculation of Guillory's average weekly wage based on the forty-hour presumption of subsection (i).
Defendants also assign error to the assessment of penalties and attorney fees based on the miscalculation of Guillory's average weekly wage. Under La. R.S. 23:1201 F, penalties and attorney fees for a failure to properly pay benefits shall be assessed unless the claim is reasonably controverted or resulted from conduct over which the employer or insurer had no control. In order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. See Brown v. Texas-LA Cartage, Inc., 98-1063, pp. 8-9 (La.12/1/98), 721 So.2d 885, 890. The decision to impose penalties and attorney fees is essentially a factual issue subject to the manifest error or clearly wrong standard of review. Authement v. Shappert Engineering, XXXX-XXXX, p. 12 (La.2/25/03), 840 So.2d 1181, 1188-89.
In this case, the error in calculating Guillory's average weekly wage did not result from conditions beyond LWCC's control, nor did defendants reasonably controvert Guillory's claim. The adjustor who initially handled the claim did not utilize the forty-hour presumption because Guillory did not work forty hours per week in the four weeks preceding his injury. However, the file does not indicate the adjustor made any inquiry as to whether this fact was attributable to Guillory's own discretion or to some other reason. Prior to trial, Guillory's boss had always considered him to be a full-time employee. Yet there were no adjustor's notes reflecting whether Guillory was considered by his employer to be a full-time or part-time employee, although the current adjustor indicated this was one of the normal inquiries made in determining an employee's average weekly wage. If an insurer fails to properly investigate a claim, it subjects itself to penalties and attorney fees. McClendon v. Keith Hutchinson Logging, 96-2373, p. 10 (La.App. 1st Cir.11/7/97), 702 So.2d 1164, 1171-72, writ denied, 97-2872 (La.2/13/98), 706 So.2d 995. Since the record indicates LWCC failed to properly investigate the claim herein, we conclude the imposition of penalties and attorney fees was not manifestly erroneous or clearly wrong.

CHOICE OF PHYSICIAN
Defendants argue the OWC judge committed error in finding LWCC deprived Guillory of his right to see the physician of his choice in the field of orthopedic surgery and in awarding penalties and attorney fees on that basis.
By letter dated April 27, 2004, Guillory's attorney, Michael Miller, requested that LWCC authorize treatment by Dr. Anil Nanda, an orthopedic surgeon from Shreveport, Louisiana. Miller explained that Guillory wished to be treated by Dr. Nanda, because he previously had performed surgery on Guillory. LWCC denied the request, stating in its April 30, 2004 reply that:
It is not necessary and probably not healthy for Mr. Guillory to travel to Shreveport to see Dr. Nanda. Our records indicate that Mr. Guillory lives in the Baton Rouge area. We have been contacted by Dr. Isaza's office. Dr. Isaza's office has asked for authority to treat Mr. Guillory. Since LWCC and Mr. Guillory's employer did not schedule *693 the appointment, one would assume Mr. Guillory contacted Dr. Isaza's office himself. Therefore, I will consider Dr. Isaza's [sic] as Mr. Guillory's choice of physician.
By letter dated May 11, 2004, Miller responded:
I am in receipt of your April 30, 2004 correspondence. I understand that Mr. Brad Guillory sought treatment at the emergency room and the doctor at the emergency room was Dr. Isaza. Therefore, this was not Mr. Guillory's choice of physician. Mr. Guillory would like to see Dr. Nanda because he previously treated him for his back.
Mr. Guillory needs medical treatment. He would like to see Dr. Nanda. If you will not authorize Dr. Nanda, he will see Dr. Isaza. However, as previously stated, Mr. Guillory did not choose Dr. Isaza.
Please let me know if you will authorize medical treatment with Dr. Nanda.
LWCC again denied authorization for Guillory to see Dr. Nanda. Thereafter, Guillory began seeing Dr. Isaza.
La. R.S. 23:1121 B(1) provides that an employee "shall have the right to select one treating physician in any field or specialty." The Louisiana Supreme Court has held that this provision gives an injured employee an absolute right to select one physician in any field without the approval of the employer. Smith v. Southern Holding, Inc., XXXX-XXXX, p. 9 (La.1/28/03), 839 So.2d 5, 11.
In the instant case, the record demonstrates that Guillory clearly indicated to LWCC that Dr. Nanda was his choice as an orthopedic surgeon. On two occasions he requested authorization from LWCC to be treated by Dr. Nanda. At the time of the requests, Dr. Isaza had not yet treated Guillory, except possibly on the occasion when Guillory went to the emergency room.[4] Guillory only began treatment with Dr. Isaza on July 6, 2004, well after LWCC had twice refused authorization for him to see Dr. Nanda.
Under the circumstances, we find no error in the conclusion of the OWC judge that Guillory was deprived of his choice of physician and was entitled to treatment by Dr. Nanda. LWCC's action in denying authorization for treatment by Dr. Nanda constituted a violation of La. R.S. 23:1121 B(1). Although defendants contend it was unreasonable and possibly a health risk for Guillory to be treated by a physician in Shreveport, the statute places no such limitation on an employee's right to make an initial choice of physician. As noted, the Louisiana Supreme Court has characterized this right as being absolute. See Smith, XXXX-XXXX at p. 9, 839 So.2d at 11.
Defendants also argue the OWC judge erred in awarding penalties and attorney fees based on LWCC's refusal to authorize treatment by Dr. Nanda. They assert LWCC was justified under La. R.S. 23:1121 B(2)(a) in assuming Dr. Isaza was Guillory's choice, since LWCC did not direct him to Dr. Isaza. However, the OWC judge specifically found that Dr. Isaza was "no one's choice" but was "referred by the emergency room."
A refusal to consent to an employee's request to select a treating physician justifies an award of penalties and attorney *694 fees, except where the employee's claim is reasonably controverted. La. R.S. 23:1201 F; Authement, XXXX-XXXX at p. 8, 840 So.2d at 1186. In this case, LWCC initially may have been justified in assuming Dr. Isaza was Guillory's choice when it received a request for authorization of treatment from his office. However, LWCC acted arbitrarily in continuing to insist that Dr. Isaza was Guillory's choice once his attorney put LWCC on notice of the actual circumstances, especially since LWCC had no documentation that Dr. Isaza had actually treated Guillory. Moreover, defendants' reliance on La. R.S. 23:1121 B(2)(a) is misplaced. Under this provision, if an employee is treated by a physician to whom he has not been specifically directed by the employer or insurer, that physician shall be considered the employee's choice of physician. However, at the time LWCC denied Guillory's requests, he had not been treated by Dr. Isaza (except possibly in the emergency room). Accordingly, we find no manifest error in the finding of the OWC judge that defendants did not reasonably controvert the fact that it denied Guillory's right to select the physician of his choice.

MILEAGE REIMBURSEMENT
Lastly, defendants contend the OWC judge erroneously assessed $2,000 in penalties and attorney fees for LWCC's failure to pay Guillory a total of thirty-nine cents for mileage reimbursement.
When an injured employee uses his own vehicle to obtain medical services, La. R.S. 23:1203 D provides that he is entitled to mileage reimbursement from his employer at the same rate per mile as established by the state for the reimbursement of state employees using their personal vehicles on state business. If an employer fails to pay such mileage reimbursement within sixty days of receiving written notice thereof, it is subject to the imposition of penalties. See La. 23:1201 E and F. In the instant case, defendants admit an error in payment, but argue it was merely an oversight. The discrepancy occurred because LWCC continued to pay mileage reimbursement based on thirty-two cents per mile even after the rate increased on July 1, 2004 to thirty-four cents per mile. Defendants point out that Guillory's attorney requested reimbursement at the rate of thirty-two cents per mile in a letter to LWCC dated April 27, 2004. Thus, they argue their conduct was not arbitrary or capacious.
However, the proper inquiry is whether the claim was reasonably controverted or the nonpayment resulted from conditions beyond the defendants' control. See La. R.S. 23:1201 F. The fact that the LWCC adjustor was unaware of the change in the mileage reimbursement rate was not a valid reason for the nonpayment of the thirty-nine cents owed. Further, defendants' reliance on the fact that opposing counsel requested reimbursement at the rate of thirty-two cents is misplaced, because that was the correct reimbursement rate at the time of the request. Defendants failed either to reasonably controvert the claim or to show the nonpayment resulted from conditions beyond their control. Accordingly, despite the fact that the nonpayment was for only thirty-nine cents, we cannot say the OWC judge committed manifest error or was clearly wrong in assessing penalties and attorney fees.

ATTORNEY FEES FOR APPEAL
As the sole assignment of error in his appeal, Guillory seeks an increase in attorney fees for defending against defendants' appeal. This court has held that such an increase is appropriate when the employer appeals, obtains no relief, and the appeal has necessitated additional *695 work for claimant's counsel, provided the claimant properly requests the increase. Cade, XXXX-XXXX at pp. 6-7, 868 So.2d at 748. These criteria are met in the instant case. Guillory's attorney expended time and effort in preparing an appellate brief and in participating in oral arguments before this court. Accordingly, we conclude an increase of $2,500 in attorney fees is warranted.

CONCLUSION
For the above reasons, we amend the judgment to award claimant, Brad Guillory, additional attorney fees in the sum of $2,500, with legal interest from date of this opinion until paid. The trial court judgment is affirmed in all other respects. All costs of both appeals are assessed equally to defendants, Bofinger's Tree Service and Louisiana Workers' Compensation Corporation.
AFFIRMED, AS AMENDED.
PARRO, J., concurs and assigns reasons.
McCLENDON, J., dissents in part, and assigns reasons.
PARRO, J., concurring.
In light of the applicable statutory law, I feel constrained to agree with the majority's resolution of the issue pertaining to the award of penalties on the underpayment in connection with Brad Guillory's claim for mileage reimbursement; however, I do not believe that such an award serves the interests of justice.
Regarding the recovery of penalties for the failure to timely pay, LSA-R.S. 23:1201(F) provides in pertinent part:
Failure to provide payment in accordance with this Section . . . shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid . . . medical benefits, or fifty dollars per calendar day for each day in which any and all . . . medical benefits remain unpaid . . . together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. . . .
Penalties are warranted where there has been a failure to provide payment in accordance with LSA-R.S. 23:1201. Pursuant to LSA-R.S. 23:1201(E), medical benefits payable under the workers' compensation law shall be paid within sixty days after the employer or insurer receives written notice thereof. Therefore, it must be determined whether the payment for mileage constitutes a medical benefit payable under the workers' compensation law.
The employer's duty to furnish medical expenses is governed by LSA-R.S. 23:1203. Employers are liable for mileage reimbursement in a workers' compensation case under LSA-R.S. 23:1203(D), which states:
In addition, the employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee in order to obtain the medical services, medicines, and prosthetic devices, which the employer is required to furnish under this Section, and for the vocational rehabilitation-related mileage traveled by the employee at the direction of the employer. When the employee uses his own vehicle, he shall be reimbursed at the same rate per mile as established by the *696 state of Louisiana for reimbursement of state employees for use of their personal vehicle on state business. The office shall inform the employee of his right to reimbursement for mileage.
Therefore, an employee may recover reasonable travel expenses and mileage in connection with medical treatment as part of the employee's medical benefits payable under the workers' compensation law. See Jeffcoat v. McCann's Seafood, 96-1259 (La. App. 3rd Cir.5/7/97), 696 So.2d 8, 10-11. Accordingly, an award of penalties is warranted where there has been a failure to provide payment for mileage in accordance with LSA-R.S. 23:1201, that is, within sixty days after the employer or insurer receives written notice thereof. Once the claimant has submitted a documented request for payment of mileage, the burden shifts to the employer or insurer to show that the request was timely paid. Jeanise v. Cannon, 04-1049 (La.App. 3rd Cir.2/23/05), 895 So.2d 651, 667, writs denied, 05-0788 and 05-0785 (La.5/13/05), 902 So.2d 1021.
On July 29, 2004, Guillory made a written request for reimbursement of the mileage in question. It is undisputed that payment was made by the insurer within sixty days after LWCC received Guillory's request for payment. However, the reimbursement for those expenses incurred in July 2004 was not made at the same rate per mile as established by the state of Louisiana for reimbursement of state employees for use of their personal vehicles on state business. Thus, the medical benefit to which Guillory was entitled under LSA-R.S. 23:1203(D) had not been fully paid within the time delay required by LSA-R.S. 23:1201(E). This technical violation of LSA-R.S. 23:1203(D) constitutes a failure to provide benefits in accordance with the workers' compensation statutes, entitling Guillory to penalties under LSA-R.S. 23:1201(F).
Accordingly, I respectfully concur.
McCLENDON, J., dissents in part, and assigns reasons.
I respectfully dissent in part. Based on the reasoning set forth in Thomas v. Tony's Seafood, Ltd., 633 So.2d 675, 681 (La.App. 1 Cir.1993), writ denied, 94-0223 (La.3/18/94), 634 So.2d 856, I disagree with the award of penalties and attorney's fees for the thirty-nine cent underpayment. For a while both the plaintiff and defendants were unaware of the change in the mileage reimbursement amount. Thus, this appears to be more of a simple miscalculation than an unreasonable refusal to pay.
NOTES
[1] These assignments were designated in brief as issues, rather than as assignments of error. However, defense counsel clarified during oral arguments before this court that they were intended to be assignments of error.
[2] After Guillory's accident, La. R.S. 23:1021(10) was redesignated as La. R.S. 23:1021(12) pursuant to the statutory revision authority of the Louisiana Law Institute.
[3] After Guillory's accident, La. R.S. 23:1021(9) was redesignated as La. R.S. 23:1021(11) pursuant to the statutory revision authority of the Louisiana Law Institute.
[4] Although Guillory's attorney indicated in his letter to LWCC that it was his understanding that Dr. Isaza had treated Guillory in the emergency room, it is not clear that he actually did so. Dr. Isaza's records contain no reference to any such treatment. In any event, La. R.S. 23:1121 E provides that a physician who administered emergency treatment to an employee shall not be construed as the employee's physician of choice.